Nicholas M. M. Drum, OSB #063167
Dayna J. Christian, OSB #973360
Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, Oregon 97209
Phone: (503) 802-5533
E-Mail: nick.drum@immixlaw.com
E-Mail: dayna.christian@immixlaw.com

Attorneys for Plaintiff Billups, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BILLUPS, INC., an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMBASSADOR TECHNOLOGIES, INC. dba BYPROXIE, a foreign corporation; HOMETOWN HEART, a foreign corporation; EAZE TECHNOLOGIES INC., a foreign corporation; and HERBAN INDUSTRIES CA LLC, a foreign limited liability company,<br><br>Defendants. | Case No.: 3:20-CV-00891-BR<br><br>**PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>*Oral Argument Requested* |

Plaintiff Billups, Inc. ("Billups" or "Plaintiff") submits the following response to the

Motion to Dismiss the First Amended Complaint ("Motion") filed by Defendants Eaze

Technologies Inc. ("Eaze") and Hometown Heart ("HTH," and together with Eaze,

"Defendants"). For the reasons set forth below, Plaintiff objects to Defendants' Motion and

respectfully requests that it be denied.

Page 1 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE
TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

# I.  INTRODUCTION

Defendants' Motion argues that Plaintiff's First Amended Complaint should be dismissed because (1) Billups' allegations do not support claims for relief against Defendants, (2) Defendants are not subject to personal jurisdiction in the State of Oregon, and (3) the doctrine of *forum non conveniens* compels dismissal of this action.  Each of Defendants' arguments is entirely without merit and unsupported by the pertinent legal authorities.  For the reasons fully detailed below, it is indisputable that Billups' causes of action against Defendants are properly brought and pled, Defendants are subject to personal jurisdiction in the State of Oregon, and the *forum non conveniens* doctrine does not necessitate dismissal of this action.  Thus, Defendants' Motion must be denied, and Billups respectfully requests that this Court rule accordingly.

In opposition and response to Defendants' Motion, Billups submits the following statement of background facts and memorandum of law.

# II.  STATEMENT OF FACTS

Billups filed its original Complaint in this litigation on June 3, 2020.  *Complaint* (Docket No. 1).  On September 18, 2020, Billups filed its First Amended Complaint.  *First Amended Complaint* (Docket No. 19).  All of the allegations contained in the First Amended Complaint are based upon Billups' best knowledge, information, and belief, and each of the causes of action contained therein are fully and properly pled with respect to each defendant.  As pertinent to the Motion, the First Amended Complaint contains the following allegations and causes of action.

In 2019, HTH and Defendant Herban Industries CA LLC ("Herban") were jointly owned by non-party DionyMed, Inc. ("DionyMed").  *Id.* ¶ 9.  HTH and Herban appointed Defendant Ambassador Technologies, Inc. dba ByProxie ("ByProxie") to act as their advertising agent in relation to the sale and delivery of cannabis products.  *Id.* ¶¶ 9–10.  To the best of Billups' knowledge, this agency relationship included ByProxie's authority to sign advertising-related contracts on behalf of HTH and Herban.  *Id.* ¶ 10.

Using this authority, ByProxie acted for itself and as Herban's and HTH's agent to enter

Page 2 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

into multiple advertising-related contracts with Billups.  *Id.* ¶ 11.  In doing so, it also consented (on behalf of ByProxie, HTH, and Herban) to jurisdiction and venue in the State of Oregon for disputes arising from those contracts.  *Id.* ¶ 16.  Despite Billups' full performance, ByProxie, HTH, and Herban failed to pay in full for Billups' services under six of these contracts.  *Id.* ¶¶ 18–19, 21–22, 24–25, 27–28, 30–31, 33–34.

 In approximately February 2020, DionyMed sold HTH to Eaze.  *Id.* ¶ 36.  To the best of Billups' knowledge, as part of Eaze's acquisition of HTH, Eaze assumed HTH's liabilities and became responsible for HTH's outstanding contractual debts owed to Billups.  *Id.* ¶ 37.  Such assumption either occurred expressly as part of the acquisition or by way of Oregon's successor liability laws (which are explained in further detail below) because Eaze consolidated/merged with HTH and/or continued HTH's business after the acquisition.  *Id.* ¶¶ 5, 37–38.

Based upon these facts and circumstances, the First Amended Complaint states claims for six counts of breach of contract against ByProxie, HTH, Herban, and Eaze; each count alleges that ByProxie, HTH, and Herban are jointly and severally liable for the breaches of contract, and Eaze is liable to the same degree as HTH either because Eaze assumed HTH's liabilities or because Eaze is HTH's successor in interest.  *Id.* ¶¶ 39–76.  The First Amended Complaint also alleges a cause of action for unjust enrichment, stating that ByProxie, Herban, and HTH were unjustly enriched by Billups' services and are jointly and severally liable for the same; again, the claim asserts that Eaze acquired HTH's liabilities, received the same enrichment benefit as HTH, and is therefore also liable to the same extent as HTH under this cause of action.  *Id.* ¶¶ 77–83.

### III.  MEMORANDUM OF LAW

**A.**    **Billups' claims against HTH and Eaze are properly pled and cannot be dismissed for failure to state a claim.**

Defendants' arguments that Billups' claims for breach of contract and unjust enrichment should be dismissed under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) because they fail to allege facts sufficient to state claims against them are without merit and should be rejected by

Page 3 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE
TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

this Court.  *See Motion*, 5–8.  Under the standard of review that applies to motions to dismiss

brought under FRCP 12(b)(6), it is clear that Billups sufficiently pled its claims to state viable

causes of action against HTH and Eaze and is entitled to an opportunity to attempt to prove these

claims to a jury.  As such, Billups' breach of contract and unjust enrichment claims cannot be

dismissed, and Defendants' Motion must be denied.

1. **The standard of review for motions to dismiss brought under FRCP 12(b)(6) is broadly accepting of all plausible claims alleged by a plaintiff and allows such claims to proceed if there is any possibility that the defendant could be held liable.**

When presented with a motion to dismiss, a court must apply two tenets to its analysis of

the complaint at issue: (1) "a court must accept as true all of the allegations contained in a

complaint"; and (2) "only a complaint that states a plausible claim for relief survives a motion to

dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (discussing *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555–56 (2007)).  In considering a motion to dismiss, the complaint must

be "construed in the light most favorable to the plaintiff," and "all reasonable inferences that can

be drawn from the pleading are drawn in favor of the pleader."  CHARLES ALAN WRIGHT &

ARTHUR R. MILLER, 5B FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2017); *see also Chubb

Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

To properly state a claim for relief, a pleading must contain a short and plain statement of

the court's jurisdictional grounds, a short and plain statement of the claim demonstrating the

pleader's entitlement to relief, and a demand for the relief sought.  FRCP 8(a).  As referenced in

the aforementioned tenets, the "facial plausibility" of a claim for relief exists when a complaint

"pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  To be clear, the "plausibility

standard" is not a heightened probability requirement, but a lower requirement that only "asks

for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  When a complaint

contains "well-pleaded factual allegations, a court should assume their veracity and then

Page 4 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE
TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  A court is entitled to engage and draw upon its "judicial experience and common sense" in making this determination.  *Id.*

A court cannot dismiss a properly pled claim for relief based solely upon the possibility that the plaintiff may ultimately be unable to find evidentiary support for the allegations contained therein or otherwise fail to prove the cause of action to the factfinder's satisfaction. *Twombly*, 550 U.S. at 563 n.8.  When a complaint alleges facts sufficient to constitute unlawful conduct, "'[n]o matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it.'"  *Id.* (quoting *Cont'l Collieries, Inc. v. Shober*, 130 F.2d 631, 635 (C.A.3 1942)).  A district court considering a motion to dismiss should ask "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

As fully detailed below, when the well-pled allegations in the First Amended Complaint are taken as true and viewed in the light most favorable to Billups, it is clear that Billups has stated plausible claims for breach of contract and unjust enrichment against both HTH and Eaze, giving rise to a potential entitlement to relief with respect to both Defendants.  Thus, Billups is entitled to the opportunity to engage in discovery, present evidence in support of its allegations, and try to prove its claims before a jury.  Accordingly, Defendants' Motion must be denied.

### 2.  The First Amended Complaint unquestionably states proper breach of contract claims against HTH and Eaze that are not subject to dismissal.

When all of the allegations in the First Amended Complaint are accepted as true and viewed in the light most favorable to Billups, it is clear that Billups' breach of contract claims against HTH and Eaze state facially plausible causes of action that give rise to an entitlement for relief.  Because these claims are properly pled, Billups is entitled to engage in discovery, present evidence in support of its allegations, and attempt to prove its case before a jury.  *See Twombly*,

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

550 U.S. at 563 n.8; *Iqbal*, 556 U.S. at 678–79.  Thus, Billups' breach of contract claims cannot be dismissed, and Defendants' Motion must be denied.

        (a)      **The First Amended Complaint includes allegations that address each element of a breach of contract claim.**

      The First Amended Complaint unquestionably alleges and pleads facts sufficient to satisfy each element of a breach of contract claim.  To state a claim for breach of contract under Oregon law, a complaint must allege the following elements: "1) the existence of a contract; 2) the relevant contract terms; 3) that the plaintiff fully performed and did not breach the contract; and 4) that the defendant breached the contract terms resulting in damage to the plaintiff." *Matchniff v. Great Nw. Ins. Co.*, 224 F. Supp. 3d 1119, 1124 (D. Or. 2016).  Billups' breach of contract claims clearly satisfy these pleading requirements.  When taken as true and viewed in the light most favorable to Billups, the pertinent facts alleged in the First Amended Complaint with respect to HTH and Eaze are as follows:

- First, six valid and enforceable advertising campaign contracts existed between Billups, ByProxie, and HTH after ByProxie acted as HTH's advertising agent to enter into these contracts on behalf of itself and HTH.  *See First Amended Complaint*, ¶¶ 10–11, 13, 17, 20, 23, 26, 29, 32, 40, 46, 52, 58, 64, 70.

- Second, the relevant terms of the six contracts include but are not limited to: jurisdiction and venue provisions; advertising terms, including display sites, media locations, time, and pricing; invoicing terms and payment provisions; terms relating to ByProxie's role as an agent to HTH for purposes of the contracts; and prevailing party provisions.  *See id.* ¶¶ 8, 12–16, 17, 20, 23, 26, 29, 32.

- Third, Billups fully performed under the contracts by providing the requested advertising services and did not breach the contracts in any way.  *See id.* ¶¶ 18, 21, 24, 27, 30, 33, 41, 47, 53, 59, 65, 71.

- Fourth, HTH and its agent, ByProxie, breached the contracts by failing to pay in full the contract sums invoiced by Billups, resulting in damages to Billups for these amounts that remain due and owing.  *See id.* ¶¶ 18–19, 21–22, 24–25, 27–28, 30–31, 33–34, 42–44, 48–50, 54–56, 60–62, 66–68, 72–74.  Eaze is equally responsible for HTH's damages to Billups because when Eaze acquired HTH it assumed its assets and liabilities, including debts arising from the media campaign at issue in this lawsuit, merged/consolidated with HTH, and continued HTH's business.  *See id.* ¶¶ 3, 5, 37–38, 76.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

The First Amended Complaint also includes a statement of this Court's jurisdictional grounds and a demand for the requested relief associated with Billups' breach of contract claims. *See id.* ¶¶ 6–8, 44, 50, 56, 62, 68, 74; *see also id.* at Request for Relief.

Thus, the First Amended Complaint pleads factual allegations sufficient to satisfy each of the elements of Billups' breach of contract claims and give rise to an entitlement to relief as to both HTH and Eaze. Accordingly, Billups' breach of contract claims against HTH and Eaze are properly stated and cannot be dismissed.

> **(b)** **Defendants' argument that the breach of contract claims should be dismissed because HTH and Eaze were not parties to the contracts should be disregarded by this Court.**

Defendants' argument that Billups' breach of contract claims should be dismissed because neither HTH nor Eaze signed the contracts at issue is without merit and should be disregarded by this Court. *See Motion,* 5–6.[1] Defendants' argument on this point entirely overlooks the fact that Billups has alleged that ByProxie signed the contracts as HTH's agent and entered into them for HTH's benefit and on HTH's behalf (with Eaze later becoming responsible for HTH's outstanding debts upon its acquisition of HTH). *See, e.g., First Amended Complaint,* ¶¶ 11, 37. It is a well-established principle of Oregon law that an agent may bind a principal by entering into a contract on the principal's behalf so long as the agent acts with actual (express or implied) or apparent authority. *See H.H. Taylor, C.A. v. Ramsay-Gerding Constr. Co.,* 345 Or. 403, 409–10 (2008). Thus, HTH is bound by the contracts at issue in this lawsuit; Eaze is likewise bound as HTH's successor (as fully discussed in Section III(A)(2)(d) below).

Billups' allegations are all well-supported by the contracts and invoices at issue in this lawsuit, which are attached as Exhibits A through F to the First Amended Complaint. Billups is

---

[1] At several points in the Motion, Defendants rely upon legal authorities from other jurisdictions that interpret and apply the laws of states other than Oregon. *See, e.g., Motion,* 5 (citing cases from the District of Columbia, the Northern District of Illinois, and the District of Nevada). These authorities are not binding upon this Court, and they should be disregarded as the Court considers and rules upon the issues raised in the Motion.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

an advertising company that works to place advertisements on out-of-home advertising spaces, such as billboards. *First Amended Complaint,* ¶ 1. ByProxie is an advertising agency, meaning that it serves customers who seek advertising and advertising-related services. *See id.* ¶ 2. Advertising agencies are, first and foremost, agents acting on behalf of their customers. Advertising agencies effectuate their customers' advertising campaigns and, in so doing, incur costs that are covered by their customers.

This standard method of operation is embodied in the contracts at the heart of this case. Each of the six contracts attached to the First Amended Complaint expressly states that: "The parties acknowledge that Client [ByProxie] may be acting as agent to an advertising customer ("Advertiser"), and that if so, Advertiser shall guarantee Client's payment of all charges, expenses and costs arising out of all contracts and/or schedules with OOH owners." *Id.* at Ex. A at 8, Ex. B at 3, Ex. C at 7, Ex. D at 8, Ex. E at 9, Ex. F at 4. Billups' invoices (which are also attached to the First Amended Complaint) list CaliChill as the "Advertiser," as CaliChill was ByProxie's customer and the brand that received and benefited from Billups' contractual performance. *See id.* at Ex. A at 12–18, Ex. B at 7–12, Ex. C at 11–16, Ex. D at 12–20, Ex. E at 13–22, Ex. F at 8–11. Per the contracts, CaliChill authorized its advertising agent ByProxie to engage Billups and agreed through its agent to guarantee payment of all charges under the contracts. In exchange, Billups provided an extensive and expensive advertising campaign for the CaliChill brand, product, and services.

In this lawsuit, Billups contends that CaliChill, which is not an actual company, was the mark associated with the collective enterprise of Defendants Herban and HTH, along with non-party DionyMed, which is now insolvent. *See id.* ¶¶ 4, 9. Billups' contention, which is on information and belief, is backed by substantial corroborating information, and Billups expects that contention to be well-proven through discovery in this litigation.

Page 8 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

### (c)    Defendants' argument that Billups failed to plead facts regarding ByProxie's status as HTH's agent is erroneous.

Similarly, Defendants' argument that Billups' breach of contract claims should be dismissed because the First Amended Complaint does not sufficiently allege that ByProxie was HTH's agent is inaccurate and meritless. *See Motion*, 6–7. Courts typically "determine the existence of an agency relationship at the summary judgment stage, not in determining a motion to dismiss." *Banks v. N. Trust Corp.*, 929 F.3d 1046, 1054 (9th Cir. 2019). In considering a party's agency status for purposes of ruling on a motion to dismiss, the United States District Court for the District of Oregon explained that:

> Under Oregon law, agency exists where the principal and agent have agreed that the agent will act on the principal's behalf and subject to the principal's control. . . . "An agency relationship may be evidenced by an express agreement between the parties, or it may be implied from the circumstances and conduct of the parties."

*Wells Fargo Bank, N.A. v. Ash Org.*, No. CV-09-188-MO, 2009 WL 4884467, at *3 (D. Or. Dec. 8, 2009) (internal citations omitted). Because the party's agency status was unclear and resolution "require[d] evidence of conduct unavailable on the current [motion to dismiss] record," the court held that the plaintiff's claims would remain intact until the party's agency status was clarified. *Id.* at *4.

Here, the First Amended Complaint contains clear and sufficient factual allegations regarding the agency relationship between HTH, Herban, and ByProxie. The First Amended Complaint alleges that the agency relationship between HTH, Herban, and ByProxie began when HTH and Herban "appointed ByProxie to act as their advertising agent" and "arrange and execute an advertising campaign" on their behalf and subject to their control "wherein their advertising content . . . would be displayed [in various locations]." *First Amended Complaint*, ¶ 10. The First Amended Complaint further alleges that as part of this agency relationship, HTH and Herban authorized ByProxie "to sign contracts on behalf of HTH and Herban in furtherance of their advertising campaign." *Id.*

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

Additionally, the First Amended Complaint includes allegations that ByProxie took various actions on behalf of and for the benefit of HTH pursuant to its agency authority, including entering into contracts with Billups for the purpose of furthering HTH's advertising campaign. *See id.* ¶¶ 8, 10–17, 20, 23, 26, 29, 32. As discussed above, the contracts and invoices, read together, demonstrate that ByProxie was acting as an advertising agent to its customers, HTH and Herban, which agreed through ByProxie to pay Billups all sums due and owing under the contracts.[2] This allegation, which must be taken as true at this time, establishes an agency relationship between HTH and ByProxie for the purposes of adjudicating and defeating this Motion.

Thus, it is clear that the First Amended Complaint alleges that: (1) HTH and Herban entered into an agency relationship with ByProxie, whereby ByProxie acted on HTH and Herban's collective behalf and subject to their control; and (2) this relationship was either formed by way of an express agreement—such as an agency agreement between ByProxie, HTH, and Herban—or, at the very least, was indisputably implied by the circumstances and conduct surrounding ByProxie's instructions to Billups, and Billups' subsequent promotion of the CaliChill brand under which Herban and HTH collectively operated. *See id.* ¶¶ 8, 10–17, 20,

---

[2] Defendants argue that Billups has no good faith basis for alleging that ByProxie acted as HTH's agent. Billups' good faith basis stems in part from Eaze's own allegations in *Herban Industries CA LLC v. Eaze Technologies, Inc.* (Superior Court of Cali

fornia for the County of San Francisco Case No. CGC-19-576443). Eaze, at the time, was not the owner of HTH, but instead sued HTH, Herban, and non-party DionyMed, alleging that all three entities were from April 2019 to September 2019 acting "jointly, in concert, and with knowledge of the actions" of each other to unlawfully compete with Eaze through the CaliChill brand. *See Eaze Technologies, Inc.'s Cross-Complaint*, ¶¶ 16, 36, 39, 45, 52, 62, 65. That case settled and, shortly thereafter, Eaze became the owner of HTH. Billups' theory in this case mirrors Eaze's own allegations in that case: namely that from April 2019 to September 2019, HTH, Herban, and DionyMed were acting as one enterprise to further the CaliChill venture. Acting as one enterprise, they engaged Billups through their advertising agency, ByProxie, to advertise the CaliChill brand. Eaze's allegation that Billups has no good faith basis to allege this alliance is simply not credible in light of Eaze's own allegations filed with the California Superior Court.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

23, 26, 29, 32.  These allegations are more than sufficient to support a breach of contract claim

based upon an agency relationship.  *See Wells Fargo Bank, N.A.*, 2009 WL 4884467, at *3.

Even if ByProxie's exact agency status and/or the specific terms of the agency

relationship are currently unclear, Billups is entitled to engage in discovery before these well-

pled allegations can be considered and ruled upon by this Court.  Billups will provide evidence

in discovery that the agency relationship was an essential aspect of its decision to enter into a

contract with ByProxie on behalf of HTH.[3]  Because the resolution of this issue would require

evidence that cannot be considered until the summary judgment (or trial) stage of this litigation,

it would be improper to dismiss Billups' claims on this basis pursuant to a motion to dismiss

through which only the sufficiency of the claim pleadings may be ruled upon.  *See Banks*, 929

F.3d at 1054; *Wells Fargo Bank, N.A.*, 2009 WL 4884467, at *4.  As such, Defendants' argument

is erroneous, and Billups' breach of contract claims are not subject to dismissal on this basis.

### (d)    Defendants' argument that the breach of contract claims against Eaze must be dismissed is entirely without merit.

Finally, Defendants argue that Billups' breach of contract claims against Eaze should be

dismissed because the First Amended Complaint does not contain factual allegations regarding

Eaze's liability and because Billups has failed to state a claim against HTH (the acquired party

from which Eaze's successor liability arises).  *See Motion*, 8.  This argument is meritless and

should be summarily dismissed by this Court.

To begin, for the reasons set forth above, Billups has indisputably stated proper claims

for relief against HTH.  *See Section III(A)(2)(a)–(c)*.  Accordingly, Defendants' argument that

Eaze should be dismissed from Billups' breach of contract claims because no cause of action has

---

[3] Submission of facts and evidence is improper in response to a motion to dismiss and here, because the First Amended Complaint sufficiently pleads valid claims, no additional facts or evidence at this stage of the litigation is required.  Should the Court request affidavits or evidence on this subject or any other subject in this response, counsel will promptly fulfill any such request.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

been pled against HTH is entirely inaccurate and should be disregarded by this Court.

Next, Defendants' argument is incorrect because the First Amended Complaint unquestionably includes sufficient factual allegations regarding Eaze's successor liability to support the breach of contract claims in this case.  The Oregon Supreme Court has summarized Oregon's successor liability laws as follows:

> The general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor.  . . .  *To this general rule there are four well recognized exceptions, under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation.  (1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation*; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts.

*Erickson v. Grande Ronde Lumber Co.*, 162 Or. 556, 568 (1939) (emphasis added) (internal citations and quotation marks omitted).

The First Amended Complaint includes factual allegations that are sufficient to plead Billups' successor liability theory and state a viable cause of action against Eaze arising from its acquisition of HTH.  Specifically, the First Amended Complaint alleges that Eaze acquired HTH, including its assets and liabilities (such as the contractual debts owed to Billups), when DionyMed sold HTH to Eaze in approximately February 2020.  *First Amended Complaint*, ¶¶ 5, 36–37, 76.  It also alleges that Eaze took on HTH's liabilities to Billups because it has used HTH's assets to continue HTH's business following the acquisition, resulting in a continuation of HTH's business and/or a consolidation or merger of the two companies.  *Id.* ¶¶ 5, 38, 76. Billups was not privy to the documentation behind Eaze's acquisition of HTH, but those facts will be discovered in this case.  Billups, on information and belief, understands that Eaze acquired all of HTH's assets and liabilities and anticipates that it will discover evidence to support that sufficiently pled allegation.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

These allegations are more than sufficient to state Billups' claims for breach of contract and plead an associated entitlement to liability against Eaze. *See Erickson*, 162 Or. at 568.  As noted above with regard to agency pleadings, even if the exact successor liability facts and evidence are subject to further development at this early stage in the litigation, Billups has pled a sustainable cause of action against Eaze, and it is entitled to engage in discovery with regard to these well-pled allegations before it would be proper for this Court to consider dismissing Eaze. Accordingly, Billups has properly included Eaze as a defendant in its breach of contract claims, and Defendants' argument to the contrary should be disregarded by this Court.

**(e)**      **Conclusion**

For these reasons, the First Amended Complaint's breach of contract claims are properly pled and cannot be dismissed.  Accordingly, Defendants' Motion must be denied.  In the event this Court determines that there is any deficiency in the First Amended Complaint's breach of contract allegations, Billups respectfully requests that this Court grant leave for it to amend the First Amended Complaint to remedy any such issues.

**3.**      **Billups' First Amended Complaint also indisputably states a proper unjust enrichment claim against HTH and Eaze that cannot be dismissed.**

Similarly, when all of the allegations in the First Amended Complaint are accepted as true and viewed in the light most favorable to Billups, it is unquestionable that Billups' unjust enrichment claim against HTH and Eaze (which was pled in the alternative to the breach of contract claims discussed above) states a facially plausible cause of action that gives rise to an entitlement for relief.  This claim is properly pled, and Billups is entitled to complete the discovery process, proffer evidence in support of its allegations, and seek to prove its case to a jury.  *See Twombly*, 550 U.S. at 563 n.8; *Iqbal*, 556 U.S. at 678–79.  Billups' unjust enrichment claim cannot be dismissed.

**(a)**      **The First Amended Complaint includes allegations that address each element of an unjust enrichment claim.**

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

The First Amended Complaint clearly alleges facts sufficient to plead each element of an unjust enrichment claim.  To state a claim for unjust enrichment under Oregon law, a complaint must allege the following elements: (1) a benefit is conferred upon the defendant; (2) the defendant is aware of the benefit that has been received; and (3) it would be unjust to allow retention of the benefit without requiring the defendant to pay for it.  *Rabinowitz v. Pozzi*, 127 Or. App. 464, 467 (1994).  As referenced in the third element above, injustice may be found where the plaintiff reasonably expected to be paid, the defendant should have reasonably expected to pay, or society's reasonable expectations of security of person and property would be defeated if payment was not required.  *Id.*

Billups' unjust enrichment claim indisputably satisfies these pleading requirements. When taken as true and viewed in the light most favorable to Billups, the pertinent facts alleged in the First Amended Complaint with respect to HTH and Eaze are as follows:

- First, Billups conferred a benefit upon HTH by providing the requested advertising services in furtherance of the advertising campaign at issue in this lawsuit.  *See First Amended Complaint*, ¶¶ 12, 17–18, 20–21, 23–24, 26–27, 29–30, 32–33, 35, 78–79.  These benefits were later inherited and received by Eaze when it acquired HTH.  *See, e.g.*, *id.* ¶ 83; *see Section III(A)(2)(d) above for a full discussion of Eaze's successor liability in this case.*

- Second, HTH is aware of the services and benefits it has received from Billups and is further aware of the invoices Billups issued in relation to the same.  *See id.* ¶¶ 18, 21, 24, 27, 30, 33, 35, 80.  Similarly, Eaze is aware that it inherited and received these benefits when it acquired HTH.  *See, e.g.*, *id.* ¶ 83.

- Third, Billups invoiced HTH and Herban (through ByProxie) for the amounts due in relation to the beneficial services it provided, and it would be unjust to allow HTH to retain the benefit of these services without paying for them.  *See id.* ¶¶ 18–19, 21–22, 24–25, 27–28, 30–31, 33–34, 81–82.  Again, Eaze inherited and received these benefits when it acquired HTH, and it would be similarly unjust to allow Eaze to retain these benefits without paying for them.  *See, e.g.*, *id.* ¶ 83.

The First Amended Complaint also includes a statement of this Court's jurisdictional grounds and a demand for the requested relief associated with Billups' unjust enrichment claim.  *See id.* ¶¶ 6–8, 82–83; *see also id.* at Request for Relief.

Page 14 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

Thus, the First Amended Complaint pleads factual allegations sufficient to satisfy each of the elements of Billups' unjust enrichment claim and give rise to an entitlement to relief with respect to both HTH and Eaze. Accordingly, Billups' unjust enrichment claim against HTH and Eaze is a properly stated claim for relief that cannot be dismissed.

      **(b)**    **Defendants' argument that an unjust enrichment claim is not available to Billups is erroneous and inconsistent with Oregon law.**

Defendants next argue that an unjust enrichment claim is unavailable to Billups because the subject matter of this dispute is governed by written contracts. *See Motion*, 8. This argument ignores the fact that a plaintiff is undeniably permitted to plead alternative causes of action under Oregon law, as fully described below. Further, this argument is inherently inconsistent with Defendants' previously asserted position that Billups cannot state a breach of contract claim against HTH and/or Eaze because they entered into no contract with Billups. *See id.* at 5–7. Defendants' argument on this point is entirely without merit, and it should be summarily disregarded by this Court.

Billups does not contest Defendants' contention that unjust enrichment is a quasi-contract claim that generally presupposes the lack of an enforceable contract governing the subject matter at issue. *See N. Clackamas Cnty. Water Comm'n v. Siemens Water Techs. Corp.*, No. 3:13-cv-01441-ST, 2014 WL 197811, at *8 (D. Or. Jan. 14, 2014). However, Defendants fail to acknowledge that it is permissible to plead alternative claim theories in a complaint. *See, e.g.*, FRCP 8(a)(3) (providing that a pleading may include demands for alternative types of relief). The United States District Court for the District of Oregon has explained this principle with regard to express and implied contract claims as follows:

> Pleading alternative claims under theories of express and implied contract may be beneficial, for example, "in the situation where it is faced with a contract which may be void under the statute of frauds, where its performance has been hindered by the defendant, where the facts at trial may show that it did not substantially perform the contract but that it is entitled to the reasonable value of the services furnished, or where the pleader is unsure of whether it can actually

Page 15 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

prove the existence of the contract at trial."

*N. Clackamas Cnty. Water Comm'n*, 2014 WL 197811, at *8 (quoting *Kashmir Corp. v. Patterson*, 43 Or. App. 45, 48 (1979)).  It is permissible for parties to pursue quasi-contractual causes of action "'when there is no valid contract between the parties, or there is some question as to whether the contract is enforceable or applies to the dispute.'"  *United States ex rel. Doughty v. Oregon Health & Sci. Univ.*, No. 3:13-CV-01306-BR, 2017 WL 1364208, at *6 (D. Or. Apr. 11, 2017) (quoting *Boldt Co. v. Thomason Elec.*, 820 F. Supp. 2d 703, 707 (D.S.C. 2007)).  When such alternative claim theories are pled, they are mutually exclusive, as there cannot be an enforceable express contract and an implied quasi-contract that cover the same conduct.  *N. Clackamas Cnty. Water Comm'n*, 2014 WL 197811, at *8.

Here, Billups has properly pled breach of contract claims with an alternative cause of action under an unjust enrichment theory.  *See First Amended Complaint*, ¶¶ 39–83.  Billups does not seek to double its recovery by being awarded separate damages under both causes of action.  Rather, Billups believes that this entire litigation can and should be resolved through its breach of contract claims.  However, to ensure that it has an avenue to pursue its damages in the event that any issue arises with regard to the validity or enforceability of the contracts at issue in this litigation, Billups has also properly included an alternative unjust enrichment cause of action.  *See id.* at Request for Relief (stating that unjust enrichment is an "alternate theory of recovery").

Defendants' Motion clearly illustrates their intention to argue that no enforceable contracts exist between themselves and Billups.  *See Motion*, 5–7.  They cannot take this position and simultaneously seek to bar Billups from bringing a cause of action for unjust enrichment.  *See N. Clackamas Cnty. Water Comm'n*, 2014 WL 197811, at *8; *United States ex rel. Doughty*, 2017 WL 1364208, at *6.  Thus, Defendants' argument is erroneous and entirely inconsistent with the applicable legal authorities.  It should be disregarded by this Court.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

(c)     **Conclusion**

For these reasons, the First Amended Complaint's unjust enrichment claim is properly

pled and cannot be dismissed.  As such, Defendants' Motion must be denied.  In the event this

Court determines that there is any insufficiency in the First Amended Complaint's unjust

enrichment pleadings, Billups respectfully requests that this Court grant leave for it to amend the

First Amended Complaint.

**B.      HTH and Eaze are subject to personal jurisdiction in the State of Oregon.**

**1.      For this Court to exercise personal jurisdiction over Defendants, such
jurisdiction must comport with Oregon's long-arm statute and comply with
due process requirements.**

When a defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff

bears "the burden to come forward with some evidence to establish jurisdiction."  *Dist. Council*

*No. 16 of Int'l Union of Painters & Allied Trades, Glaziers, Architectural Metal & Glass*

*Workers, Local 1621 v. B&B Glass, Inc.*, 510 F.3d 851, 855 (9th Cir. 2007).  Where a court rules

on a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary

hearing, the plaintiff is only required to make a prima facie showing that jurisdiction is

appropriate.  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129

(9th Cir. 2003).  "Unless directly contravened, [the plaintiff's] version of the facts is taken as

true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the

plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction

exists.'"  *Id.* (internal citations omitted).

Determining whether a district court has personal jurisdiction over a non-resident

defendant requires a two-part analysis.  *Bauman v. DaimlerChrysler Corp.*, 579 F.3d 1088, 1094

(9th Cir. 2009), *vacated on other grounds*, 603 F.3d 1141 (9th Cir. 2010).  First, the district

court's exercise of jurisdiction must comport with the requirements of the forum state's long-arm

statute.  *Id.*  Second, the district court's assertion of jurisdiction must not violate federal due

process requirements.  *Id.*

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

With regard to the first prong of the personal jurisdiction analysis, Oregon's long-arm statute provides Oregon courts with several ways to obtain and assert personal jurisdiction over a non-resident defendant. *See* Oregon Rule of Civil Procedure ("ORCP") 4. Specifically, as pertinent to this case, a court in the State of Oregon may exercise personal jurisdiction over a defendant who:

- Is engaged in substantial and not isolated activities within the State of Oregon, whether interstate, intrastate, or otherwise (ORCP 4(A)(4));

- Has expressly consented to the exercise of personal jurisdiction (ORCP 4(A)(5));

- Promised the plaintiff to pay for services to be performed in Oregon by the plaintiff (ORCP 4(E)(1));

- Received services performed for the defendant by the plaintiff in Oregon, if such performance was authorized or ratified by the defendant (ORCP 4(E)(2)); and/or

- Received goods or other things of value in Oregon from the plaintiff, without regard to where delivery to carrier occurred (ORCP 4(E)(5)).

Any one of these circumstances listed above is sufficient for this Oregon Court to exercise personal jurisdiction over these Defendants. *See* ORCP 4. Acts of an agent may support a court's exercise of personal jurisdiction over a principal. *See Kotera v. Daioh Int'l U.S.A. Corp.*, 179 Or. App. 253, 271–72 (2002).

With respect to the second prong of the personal jurisdiction analysis, due process considerations[4] protect "an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (internal citations omitted). For specific jurisdiction to exist in a particular case "[d]ue process requires that a defendant have a 'minimum level of contacts with the forum before personal jurisdiction may be exercised.'"

---

[4] It is worth noting that Oregon's laws allow a court to exercise jurisdiction over a party where "'prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States.' Or.R.Civ.P. 4L. Oregon's long-arm statute is thus coextensive with the limits of due process." *Dual Lock Partition Sys., Inc. v. Ridgeview Glass, Inc.*, 877 F. Supp. 1432, 1435 (D. Or. 1995).

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

*Shedrain Corp. v. Bonvi Sales Corp.*, 132 F. Supp. 2d 1299, 1302 (D. Or. 2001) (internal

citations omitted).  "[W]here the defendant 'deliberately' has engaged in significant activities

within a State . . . or has created 'continuing obligations' between himself and residents of the

forum, . . . he manifestly has availed himself of the privilege of conducting business there."

*Burger King Corp.*, 471 U.S. at 475–76 (internal citations omitted).  Under such circumstances,

the defendant's "activities are shielded by 'the benefits and protections' of the forum's laws

[and] it is presumptively not unreasonable to require him to submit to the burdens of litigation in

that forum as well."  *Id.* at 476.  Where interstate contractual relations are at issue, the United

States Supreme Court has "emphasized that parties who 'reach out beyond one state and create

continuing relationships and obligations with citizens of another state' are subject to regulation

and sanctions in the other State for the consequences of their activities."  *Id.* at 473 (internal

citations omitted).

The Ninth Circuit Court of Appeals has encapsulated the United States Supreme Court's

standard for establishing limited jurisdiction over a defendant into a three-part test that provides

a useful structure for this Court's analysis:

> "1) the nonresident defendant must have *purposefully availed*
> himself of the privilege of conducting activities in the forum by
> some affirmative act or conduct; 2) plaintiff's claim must *arise out
> of* or result from the defendant's forum related activities; and 3)
> exercise of jurisdiction must be *reasonable*."

*Dual Lock Partition Sys., Inc. v. Ridgeview Glass, Inc.*, 877 F. Supp. 1432, 1435–36 (D. Or.

1995) (quoting *Roth v. Garcia Marquez*, 942 F.2d 617, 620–21 (9th Cir. 1991)) (emphasis in

original).

**2.    This Court's exercise of personal jurisdiction over HTH and Eaze complies
      with the State of Oregon's long-arm statute.**

Based upon the standards set forth above, it is clear that this Court has personal

jurisdiction over HTH and Eaze.[5]  To begin, the personal jurisdiction of an Oregon court extends

---

[5] To the extent that this analysis includes discussion of contacts, conduct, and activities engaged

Page 19 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE
TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

to any defendant who "expressly consented to the exercise of personal jurisdiction" in Oregon. ORCP 4(A)(5). ByProxie, on behalf of both itself and HTH (and later HTH's successor, Eaze), consented to jurisdiction and venue in the State of Oregon. *See First Amended Complaint*, ¶ 16; *see also id.* at Ex. A at 10, Ex. B at 5, Ex. C at 9, Ex. D at 10, Ex. E at 11, Ex. F at 6 (each stating that "[f]or any dispute under this Agreement including any Collection Action the parties expressly consent to jurisdiction and venue in the State of Oregon"). Based upon this express consent to permit Oregon courts to exercise personal jurisdiction over them for the purpose of disputes arising under the contracts at issue in this lawsuit, it is clear that this Court has personal jurisdiction over Defendants. *See* ORCP 4(A)(5). The Court's analysis need not proceed beyond this point.

In the event the Court considers it necessary to continue its analysis beyond the express consent provision of ORCP 4, it is also clear that Defendants have subjected themselves to personal jurisdiction in the State of Oregon on additional grounds. First, Defendants subjected themselves to personal jurisdiction in Oregon when they substantially and repeatedly engaged Billups in the State of Oregon for six separate contracts for goods and services over a period of six months in 2019. *See* ORCP 4(A)(4); *First Amended Complaint*, ¶¶ 17–38; *id.* at Ex. A–Ex. F. Each of these contracts engaged Billups to provide services and/or to deliver, receive, and/or send from Oregon goods or other things of value for which Defendants promised to pay Billups. *See First Amended Complaint*, ¶¶ 17–38; *id.* at Ex. A–Ex. F. These promises to pay Billups for services, goods, and other things of value were to be performed in Oregon and are therefore sufficient to confer Oregon courts with personal jurisdiction over Defendants. *See* ORCP 4 (E)(1). Under each contract, Billups provided the requested services, goods, and/or other things

---

in by HTH or by ByProxie on HTH's behalf, Eaze's liability as HTH's successor in interest is fully detailed above and need not be reiterated here. Each of HTH's actions that is pertinent to the personal jurisdiction analysis is imputed to Eaze under the successor liability principles detailed above.

Page 20 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

of value to Defendants. *See First Amended Complaint*, ¶¶ 17–38. Defendants' receipt of Billups' services performed and delivered in Oregon and further receipt of goods and/or other things of value from Billups, without regard to where delivery to carrier occurred, further subjected Defendants to personal jurisdiction in the State of Oregon. *See* ORCP 4(E)(2), (5).

Defendants' express consent to jurisdiction alone is sufficient to satisfy Oregon's long-arm statute, but more than just consent exists in this case. Defendants fully engaged in repeated and substantial business contacts with an Oregon company in the State of Oregon, and they received the benefits of those business relations. Thus, Oregon's long-arm statute is satisfied, and the first prong of the personal jurisdiction test is satisfied many times over.

### 3.     This Court's exercise of personal jurisdiction over HTH and Eaze does not violate due process principles.

Having satisfied Oregon's long-arm statute, personal jurisdiction may extend to these Defendants so long as no due process violation would result. As set forth above, Defendants repeatedly engaged in business dealings in Oregon, contracted with an Oregon entity, and received services, goods, and/or other things of value that were provided in Oregon. Defendants have engaged in more than sufficient contacts with this state to allow this Court to exercise personal jurisdiction over their actions without violating due process principles.

### (a)     Defendants' actions constitute purposeful availment.

The purposeful availment prong of the due process analysis examines the actions of the defendant to see what "continuing obligations" it has created between itself and residents of the forum state. *Burger King Corp.*, 471 U.S. at 476. "'In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of *affirmative conduct which allows or promotes the transaction of business within the forum state*.'" *Dual Lock Partition Sys., Inc.*, 877 F. Supp. at 1436 (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)) (emphasis in original).

Purposeful availment does not require that the conduct or activities at issue physically

Page 21 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

occur in-person within the State of Oregon.  The United States Supreme Court has specifically

held that in-person presence within the forum state is not required, stating as follows:

> Jurisdiction . . . may not be avoided merely because the defendant
> did not *physically* enter the forum State. . . .  [I]t is an inescapable
> fact of modern commercial life that a substantial amount of business
> is transacted solely by mail and wire communications across state
> lines, thus obviating the need for physical presence within a State in
> which business is conducted.

*Burger King Corp.*, 471 U.S. at 476 (emphasis in original).  So long as a defendant's efforts are

"'purposefully directed' toward residents of another State, [courts] have consistently rejected the

notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.*

Defendants' conduct (as fully detailed above) in contracting with and receiving services

and goods from Billups constitutes purposeful availment because they created continuing

obligations with a resident of the State of Oregon and engaged in conduct that allowed and

promoted the transaction of business within this state.  *See Burger King Corp.*, 471 U.S. at 476;

*Dual Lock Partition Sys., Inc.*, 877 F. Supp. at 1436; *see also Sections II and III(B)(2) above for

a full discussion of Defendants' relevant activities*.  Defendants' business conduct was directed at

an Oregon company, and the fruits of those business contacts were delivered in Oregon, giving

rise to the causes of action at issue in this lawsuit.  Defendants' physical absence from the State

of Oregon is irrelevant in determining whether they may be subject to personal jurisdiction here;

as such, this Court should disregard Defendants' physical presence arguments in ruling on this

issue.  *See Burger King Corp.*, 471 U.S. at 476.

For these reasons, it is clear that Defendants purposefully availed themselves of the

privilege of conducting business in the State of Oregon; they have thereby invoked the benefits

and protections of this State's laws, and they are accordingly subject to personal jurisdiction in

Oregon for purposes of this lawsuit.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

**(b)**    **The claims at issue in this lawsuit arise from Defendants' Oregon-related activities.**

Such purposeful availment only gives rise to personal jurisdiction if the availing conduct corresponds with the activities that are at issue in the litigation.  "[P]laintiff's claim must *arise out of* or result from the defendant's forum related activities." *Dual Lock Partition Sys., Inc.*, 877 F. Supp. at 1435–36 (emphasis in original).  To satisfy this requirement, a "plaintiff must show that it would not have suffered an injury 'but-for' defendants' forum-related conduct." *Shedrain Corp.*, 132 F. Supp. 2d at 1303.

Here, it is beyond dispute that Defendants' actions are at the center of Billups' claims for breach of contract and unjust enrichment, and that Billups would not have suffered the damages at issue in this lawsuit in the absence of Defendants' Oregon-related activities.  Billups alleges that Defendants repeatedly engaged in contracts with Billups, received and accepted services and goods originating from those Oregon contracts, and failed to pay for the same.  *See First Amended Complaint*, ¶¶ 17–38.  Moreover, Defendants' promises to pay Billups for the services and goods that it delivered to Defendants are purposeful activities that are directly related to the heart of this dispute and which ultimately were the cause of Billups' injury.  *See id.*

Accordingly, Billups' claims arise out of and result from Defendants' Oregon-related activities, and these activities are the but-for cause of Billups' injury.  Thus, Defendants are subject to this Court's jurisdiction.

**(c)**    **This Court's exercise of personal jurisdiction over Defendants is reasonable.**

Having established that Defendants "purposefully established minimum contacts" in the State of Oregon, the burden shifts to Defendants to prove that it would be unreasonable for each of them to be subject to jurisdiction here.  *See Burger King Corp.*, 471 U.S. at 476–77 (when "a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.").  Put another way, once a defendant has established

Page 23 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE
TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone: 503-802-5533
Facsimile:  503-802-5351

minimum contacts with a state, jurisdiction is "presumptively reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991).  Defendants must prove otherwise, and they cannot.

In examining the reasonableness of requiring a defendant to defend a lawsuit in the forum state, the burden imposed on the defendant will be considered in light of other relevant factors, including:

> [T]he forum state's interest in adjudicating the dispute, . . . the plaintiff's interest in obtaining convenient and effective relief, . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (internal citations omitted).

Applied here, it is clear that Defendants cannot make such a showing, and this Court's jurisdiction over Defendants is reasonable.  First, Billups has an absolutely protectable interest in seeking effective relief in its home state.  The contracts at issue in the dispute were sought out by Defendants, negotiated, and consummated within the State of Oregon, and Defendants' conduct had a substantial economic impact within the State of Oregon.  In light of Defendants' conduct, it would be unreasonable for Billups to be prevented from seeking redress in its home state of Oregon.  The burden imposed by subjecting Defendants to jurisdiction in Oregon is minimal (if any burden exists at all), as Defendants have already obtained local counsel and appeared to pursue this Motion.

Second, the current litigation in Oregon is the most efficient way for the parties to litigate this dispute.  No efficiencies can be gained by dismissing Defendants from the case and forcing Billups to file suit against each of them separately in another jurisdiction.  Further, parsing the contract and quasi-contract claims among them would only serve to create confusion in the respective alternative jurisdiction in which each case might be tried.  Any severance of the claims brought in this litigation would not result in an efficient resolution of this matter.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

Third, "[t]he State of Oregon has a '"manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.'" *Dual Lock Partition Sys., Inc.*, 877 F. Supp. at 1438 (quoting *Burger King Corp.*, 471 U.S. at 472). Taking all of these factors into consideration, it is more than reasonable for Defendants to be subject to jurisdiction in the State of Oregon. Defendants cannot meet their burden to overcome the presumptive reasonableness that stems from their purposeful availment of the privilege of conducting business in the State of Oregon, which has clearly been established for the reasons set forth above. To prove that it would be unreasonable to subject Defendants to jurisdiction in the State of Oregon, they would have to show that their contacts with Billups were "random, fortuitous, or attenuated." *See Burger King Corp.*, 471 U.S. at 475 (internal citation and quotation marks omitted). This is a burden that Defendants cannot satisfy. Accordingly, it is reasonable for Defendants to be subject to jurisdiction in Oregon. Defendants are subject to personal jurisdiction in this Court, and the Motion must be denied.

  **(d)**   <u>**Conclusion**</u>

This Court's exercise of personal jurisdiction over these Defendants is well-supported by the applicable legal authorities. Oregon's long-arm statute was designed to capture situations that exactly mirror this fact pattern. *See* ORCP 4. Further, as fully described above, no due process violation would result from this Court's exercise of personal jurisdiction over these Defendants. When an out-of-state entity engages an Oregon entity repeatedly through multiple contracts and thereafter receives and accepts the benefit of Oregon-based services and goods, that foreign entity should expect to face litigation in Oregon in the event that a dispute arises between those parties (or their successors). *See* ORCP 4; *Dual Lock Partition Sys., Inc.*, 877 F. Supp. at 1433–36. To hold otherwise would defeat the purpose of Oregon's long-arm statute and allow these Defendants to force Billups out of its home jurisdiction. Such a result cannot stand, and the Motion must accordingly be denied.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

**C.**   **The doctrine of *forum non conveniens* does not mandate or support this Court's dismissal of this action.**

Finally, Defendants alternatively argue that this lawsuit should be dismissed under the doctrine of *forum non conveniens*.  *See Motion*, 10–11.  This argument is without merit and should be disregarded by this Court.  Again, Defendants' Motion must be denied.

**1.**   **The *forum non conveniens* doctrine only supports a defendant's request to dismiss an action due to an inconvenient forum when relevant considerations heavily weigh against the plaintiff's selected forum.**

The doctrine of *forum non conveniens* allows a court to decline to exercise jurisdiction over a lawsuit that has been brought in an inconvenient forum even when venue in that forum is proper.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947), *superseded by statute as stated in* 517 U.S. 706 (1996).  "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Id.* at 508.

In considering a motion brought on *forum non conveniens* grounds, a "court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal."  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001).  The defendant bears the burden to prove that an adequate alternative forum exists.  *Id.* at 1143.  In determining whether dismissal is appropriate, courts typically consider factors such as: the ease of accessing sources of proof; the availability of compulsory process to ensure the attendance of unwilling witnesses; the cost of procuring attendance of willing witnesses; the possibility to view the premises, if such viewing is appropriate; practical issues pertaining to case expeditiousness and cost efficiencies; judgment enforceability; court congestion; the relevance of the case to potential jurors; and the general interest in deciding disputes of local interest at home.  *Gulf Oil Corp.*, 330 U.S. at 508–09.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

2.      **This Court should not decline to exercise jurisdiction over this lawsuit on**
**_forum non conveniens_ grounds.**

As argued above, the contracts at issue in this litigation provided that these parties

consented to the State of Oregon as the venue for any litigation arising from the contracts.  *See*

*First Amended Complaint*, ¶ 16; *see also id.* at Ex. A at 10, Ex. B at 5, Ex. C at 9, Ex. D at 10,

Ex. E at 11, Ex. F at 6 (each stating that "[f]or any dispute under this Agreement including any

Collection Action the parties expressly consent to jurisdiction and venue in the State of

Oregon").  Rather than complying with this expressly stated consent, Defendants seek to pull this

litigation away from the parties' agreed-upon venue and into a less convenient forum that is not

of Billups' choosing.  It is telling that Defendants' Motion devotes no more than two paragraphs

to this argument.  *See* Motion, 10–11.  Their argument on this issue is minimal because neither

the legal authorities nor the relevant factors to be considered weigh in their favor.

Defendants chose to seek out services and goods offered by Billups in the State of

Oregon.  They chose to enter into contracts in Oregon.  And, contrary to their contractual

promises, they chose to fail to pay contractual invoices for delivered goods and services, forcing

Billups to pursue its legal remedies through the court system.  Now, they argue that Billups

should be required to chase them into California to litigate this dispute.  Such a result would be

highly unreasonable and out of compliance with the principles that underlie the *forum non*

*conveniens* doctrine.  The witnesses to this case will be representatives of Billups in Oregon, and

the contracts are governed by Oregon law.  While there are also certain California-based

witnesses, and certainly California has adequate alternate forums, the Motion fails to satisfy

Defendants' burden to overcome the presumption that the dispute is most relevant to potential

jurors in Oregon, as well as the general interest in deciding Oregon contracts and disputes in

their home jurisdiction.  *See Gulf Oil Corp.*, 330 U.S. at 508–09.  Defendants cannot prevail on

their Motion to change venue, and this Court should rule accordingly.

Page 27 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE
TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion is entirely without merit, and Plaintiff respectfully requests that it be denied. In the event this Court determines that there is any deficiency in the allegations set forth in Plaintiff's First Amended Complaint, Plaintiff respectfully requests that this Court grant it leave to amend its pleading.

DATED this 4th day of December 2020.

IMMIX LAW GROUP PC

By: _____
Nicholas M. M. Drum, OSB #063167
Dayna J. Christian, OSB #973360
Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, Oregon 97209
Phone: (503) 802-5533
E-Mail: dayna.christian@immixlaw.com
E-Mail: nick.drum@immixlaw.com
*Attorneys for Plaintiff*

Page 28 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2020 I served a true copy of the foregoing **PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES, INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** on the individuals listed below, by way of the method indicated:

Steven C. Berman                                                                *Via E-Mail*
Lydia Anderson-Dana
Stoll Stoll Berne Lokting & Shlachter P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
(503) 277-1600
sberman@stollberne.com
landersondana@stollberne.com

Paul Llewellyn (admitted *pro hac vice*)                                        *Via E-Mail*
Evangeline A.Z. Burbidge (admitted *pro hac vice*)
Amy Kashiwabara (admitted *pro hac vice*)
Lewis & Llewellyn, LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 800-0592
PLlewellyn@lewisllewellyn.com
eburbidge@lewisllewellyn.com
akashiwabara@lewisllewellyn.com

*Attorneys for Defendants Hometown Heart and Eaze Technologies, Inc.*

IMMIX LAW GROUP PC

Nicholas M. M. Drum, OSB No. 063167
Dayna J. Christian, OSB No. 973360
Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, Oregon 97209
Phone: (503) 802-5533
E-Mail: dayna.christian@immixlaw.com
E-Mail: nick.drum@immixlaw.com

*Attorneys for Plaintiff*

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351