IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BILLUPS, INC., an Oregon
corporation,

        Plaintiff,

v.

AMBASSADOR TECHNOLOGIES, INC.
dba BYPROXIE, a foreign
corporation; HOMETOWN HEART,
a foreign corporation; EAZE
TECHNOLOGIES INC., a foreign
corporation; and HERBAN
INDUSTRIES CA LLC, a foreign
limited liability company,

        Defendants.

3:20-cv-00891-BR

OPINION AND ORDER

NICHOLAS M. M. DRUM
DAYNA J. CHRISTIAN
Immix Law Group PC
600 N.W. Naito Parkway, Suite G
Portland, Oregon 97209
(503) 802-5533

        Attorneys for Plaintiff

1 - OPINION AND ORDER

**STEVEN C. BERMAN**
**LYDIA ANDERSON-DANA**
Stoll Stoll Berne Lokting & Shlachter P.C.
209 S.W. Oak Street, Suite 500
Portland, OR 97204
(503) 227-1600

**PAUL T. LLEWELLYN**
**EVANGELINE A.Z. BURBIDGE**
Amy Kashiwabara
Lewis & Llewellyn LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 800-0590

       Attorneys for Defendants Hometown Heart and Eaze
       Technologies, Inc.

**BROWN, Senior Judge.**

    This matter comes before the Court on the Motion (#20) of Eaze Technologies Inc., and Hometown Heart (HTH) to Dismiss the First Amended Complaint.  The Court concludes the record is sufficiently developed, and therefore, oral argument would not be helpful to resolve these Motions.

    For the reasons that follow, the Court **GRANTS** the Motion of HTH and Eaze and **DISMISSES** Plaintiff's First Amended Complaint as to HTH and Eaze for lack of personal jurisdiction **without prejudice.**

## BACKGROUND

    The following facts are taken from Plaintiff's First Amended Complaint (FAC) and the parties' filings related to the Motion to

Dismiss of HTH and Eaze and are taken as true unless otherwise
noted.

Plaintiff Billups, Inc., is an Oregon corporation "that
specializes in the placement of certain Out of Home
(OOH) and other media advertising for . . . companies and
advertising agencies."  FAC at ¶ 1.

Defendant Ambassador Technologies, Inc. dba ByProxie
(ByProxie) is an advertising agency registered in Delaware and
has its principal place of business in California.  ByProxie is
not registered with the Oregon Secretary of State to conduct
business in Oregon.

Defendant Herban Industries CA LLC is a limited liability
company registered and headquartered in California.  Herban sells
and delivers cannabis provided by Defendant HTH under the brand
names "CaliChill" and "Chill."  Herban is not registered with the
Oregon Secretary of State to conduct business in Oregon.

Defendant HTH is a cannabis dispensary registered and
headquartered in California.  At all relevant times HTH sold
cannabis exclusively through Herban's online platform.  Until
February 2020 HTH and Herban were jointly owned by DionyMed,
Incorporated,[1] a Canadian corporation.

Defendant Eaze Technologies, Inc., "is a Delaware

---

[1] DionyMed is not a party to this action and "is now
insolvent and in receivership."  FAC at ¶ 4.

corporation operating in California." Decl. of David Adams at
¶ 3.

In April 2019 DionyMed "used HTH and Herban in tandem for
one principal purpose: to sell and deliver cannabis online in
California. HTH, as a dispensary in California, would sell the
cannabis, while Herban would provide an online user-facing
platform called Chill or Calichill, whereby users could order the
delivery of HTH's cannabis." FAC at ¶ 9. Plaintiff alleges at
some point that

> HTH and Herban appointed ByProxie to act as their
> advertising agent. Specifically, HTH and Herban
> appointed ByProxie to arrange and execute an
> advertising campaign, wherein their advertising
> content . . . would be displayed on various OOH
> sites in California and on other media. On
> information and belief, ByProxie was duly
> authorized to sign contracts on behalf of HTH and
> Herban in furtherance of their advertising
> campaign.

FAC at ¶ 10. Defendants HTH and Eaze dispute these allegations.

On April 25, May 1, May 20, June 25, June 26, and
September 17, 2019, ByProxie and Billups entered into Media
Authorizations in which ByProxie authorized Plaintiff "to act as
[ByProxie's] agent in placing out of home advertising with owners
and other applicable parties, entering into contracts and
schedules for placement of OOH on behalf of [ByProxie], and
directing the production and installation of advertising media."
FAC Exs. A at 8, B at 3, C at 7, D at 8, E at 9, F at 4. The
Authorizations noted "[t]he parties acknowledge that [ByProxie]

4 - OPINION AND ORDER

*may* be acting as agent to an advertising customer (Advertiser), and that *if so*, Advertiser shall guarantee [ByProxie's] payment of all charges, expenses and costs arising out of all contracts and/or schedules with OOH owners."  FAC Exs. A at 8, B at 3, C at 7, D at 8, E at 9, F at 4 (emphasis added).

Plaintiff alleges it "fully performed under" all of the Authorizations, but ByProxie paid only part of the funds due under the April 25, May 1, and May 20, 2019, Authorizations and did not pay any of the funds due under the June 25, June 26, and September 17, 2019, Authorizations.

On October 29, 2019, DionyMed was "placed into receivership in Canada."  FAC at ¶ 35.  Herban and HTH, however, "continued to conduct business."  FAC at ¶ 35.

In February 2020 DionyMed sold HTH to Eaze, and Herban's online user-facing platform "ceased operation."  FAC at ¶ 36. Plaintiff asserts Eaze, "having acquired HTH in 2019,[2] has assumed HTH's liabilities and, as such, is liable for HTH's contractual obligations to Plaintiff."  FAC at ¶ 37.  "In the alternative, Eaze's purchase of HTH's assets has resulted in either a consolidation or merger of HTH with Eaze, or a continuation of HTH's business.  As such, Eaze is liable for HTH's debts under Oregon law."  FAC at ¶ 38.  Defendants Eaze and

---

[2] It appears from the remaining allegations in the First Amended Complaint that 2019 is a scrivener's error because Eaze acquired HTH in February 2020.

HTH dispute both of these allegations.

On June 3, 2020, Plaintiff filed a Complaint in this Court and brought claims for breach of contract and unjust enrichment against ByProxie, HTH, and Eaze.

On September 18, 2020, Plaintiff filed a First Amended Complaint in which it added Herban as a defendant and attached the six Media Authorizations at issue.

On October 19, 2020, Defendants HTH and Eaze filed a Motion to Dismiss the claims against them in Plaintiff's First Amended Complaint on the ground that this Court lacks personal jurisdiction over HTH and Eaze.

On December 9, 2020, the Court entered an Order of Default as to Herban.

On January 5, 2021, the Court entered an Order of Default as to ByProxie.


## STANDARDS

When "the existence of personal jurisdiction is challenged and the defendant appears specially to contest its presence in the jurisdiction, the plaintiff has the burden to come forward with some evidence to establish jurisdiction." *Dist. Council No. 16 of Intern. Union of Painters & Allied Trades, Glaziers, Architectural Metal & Glass Workers, Local 1621 v. B&B Glass, Inc.*, 510 F.3d 851, 855 (9th Cir. 2007)(citing *Schwarzenegger v.*

*Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).  "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001)(citing *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)).  If the court makes a jurisdictional decision based only on pleadings and affidavits submitted by the parties and does not conduct an evidentiary hearing, the plaintiff need make only a *prima facie* showing of personal jurisdiction.  *B&B Glass*, 510 F.3d at 855 (citation omitted).  When determining whether the plaintiff has met the *prima facie* showing, the court must assume the truth of uncontroverted factual allegations in the complaint.  *Ochoa v. J.B. Martin and Sons Farms, Inc.,* 287 F.3d 1182, 1187 (9th Cir. 2002).  *See also In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019)("When the party invoking jurisdiction does not ask for jurisdictional discovery . . . [the court] must evaluate whether the pleadings and affidavits establish a *prima facie* showing of jurisdictional facts.  Although the party asserting jurisdiction is required only to establish a *prima facie* showing of jurisdictional facts, the standard is not toothless.  The party asserting jurisdiction cannot simply rest on the bare allegations of its complaint; however, uncontroverted allegations in the complaint must be taken as true.")(quotations omitted)).

A court's personal jurisdiction over a particular defendant is proper either as "general" or "specific" personal jurisdiction. "General jurisdiction exists when the defendant's contacts with the forum state are so 'continuous and systematic' as to render the defendant essentially 'at home' in that forum." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018)(citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)).

Even if the district court does not have general jurisdiction over the defendant, the court may have specific jurisdiction "if the controversy is sufficiently related to or arose out of the defendants' contacts with the forum." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). *See also Jine v. OTA Franchise Corp.*, No. SACV2000769JVSKESX, 2020 WL 7129374, at *4 (C.D. Cal. Sept. 11, 2020)("A defendant is subject to specific personal jurisdiction only if a controversy arises out of or is sufficiently related to the defendant's contacts with the forum state.").

## **DISCUSSION**

As noted, HTH and Eaze move to dismiss the claims against them in Plaintiff's First Amended Complaint on the ground that this Court does not have personal jurisdiction over them. Although it is not entirely clear, it appears from Plaintiff's

8 - OPINION AND ORDER

response to the Motion to Dismiss that Plaintiff does not contend this Court has general jurisdiction over HTH and Eaze but instead asserts the Court has specific jurisdiction over HTH and Eaze.

## I.    Specific Jurisdiction Standards

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis.  First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute.  Second, the exercise of jurisdiction must comport with federal due process." *Bauman v. DaimlerChrysler Corp.*, 579 F.3d 1088, 1094 (9th Cir. 2009) (quotations omitted).  "Oregon Rule of Civil Procedure 4(L) extends jurisdiction to the limits of due process under the United States Constitution." *Rubicon Glob. Ventures, Inc. v. Chongquing Zongshen Grp. Imp./Exp. Corp.*, 630 F. App'x 655, 657 (9th Cir. 2015). *See also Pac. Reliant Indus., Inc. v. Amerika Samoa Bank*, 901 F.2d 735, 737 (9th Cir. 1990)("Oregon's long-arm statute confers jurisdiction to the outer limits of due process under the United States Constitution."); *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2800 n.8 (2011)("State long-arm provisions allow the exercise of jurisdiction subject only to a due process limitation in . . . Oregon.").

"The due process analysis, in turn, centers on whether [a nonresident defendant] has 'certain minimum contacts' with [the forum state], such that the exercise of jurisdiction 'does not

offend traditional notions of fair play and substantial justice.'"  *Fiore v. Walden*, 688 F.3d 558, 573 (9th Cir. 2012) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).  *See also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)(same).

As noted, a court has specific jurisdiction over a defendant when "the controversy [was] sufficiently related to or arose out of the defendants' contacts with the forum."  *Omeluk*, 52 F.3d at 270.  The Ninth Circuit applies the following three-part test to determine whether a district court constitutionally may exercise specific jurisdiction over a nonresident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Freestream Aircraft*, 905 F.3d at 603 (quoting *Schwarzenegger*, 374 F.3d at 802).  This "minimum contacts test 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'"  *Freestream Aircraft*, 905 F.3d at 603 (quoting *Burger King Corp.*

*v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

"'The plaintiff bears the burden of satisfying the first two prongs of the test.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69 (9th Cir. 2017)(quoting *Schwarzenegger*, 374 F.3d at 802). "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476-78). *See also Axiom Foods*, 874 F.3d at 1068-69 ("If the plaintiff meets [its] burden, 'the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." (quoting *Burger King*, 471 U.S. at 476-78)).

> To evaluate reasonableness, we use a seven-factor balancing test that weighs: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft*, 905 F.3d at 607 (quotation omitted).

## II.  Analysis

HTH and Eaze move to dismiss the claims against them in Plaintiff's First Amended Complaint on the ground that Plaintiff has not made a sufficient *prima facie* showing that satisfies the test for specific jurisdiction.  Plaintiff, in turn, alleges HTH and Eaze have sufficient contacts with Oregon to establish that this Court has specific jurisdiction over them.

As noted, for purposes of determining whether a court has specific jurisdiction over a defendant, the court must consider the factors set out in *Freestream Aircraft*.  When a plaintiff "fails to satisfy [any] of [the] prongs, personal jurisdiction is not established in the forum state." *Schwarzenegger*, 374 F.3d at 802.

### A.  Purposeful Availment

"[A] purposeful availment analysis is most often used in suits sounding in contract." *Freestream Aircraft*, 905 F.3d at 605.  "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.  See also Burger King*, 471 U.S. at 475-76 (A court has specific jurisdiction over a defendant when "he deliberately engaged in significant activities within a State or has created continuing obligations between himself and residents of the forum.").

HTH and Eaze assert they have not had sufficient
contacts with Oregon to satisfy the purposeful-availment prong of
the specific-jurisdiction test because they did not have a
presence in Oregon and did not undertake activities directed at
Oregon.  Specifically, HTH and Eaze point out that Plaintiff does
not allege and is unable to establish that either HTH or Eaze is
an Oregon corporation, is registered to do business in Oregon, is
headquartered in Oregon, or is actually doing business in Oregon.
HTH is a California dispensary registered and headquartered in
California, and Eaze is a Delaware corporation that does business
in California.  David Adams, Eaze's Vice President of Payments
and Litigation, testifies in his Declaration that HTH is
"licensed only in Oakland and San Francisco [and] could not, and
never did, operate outside of California."  Adams Decl. at ¶ 6.
Adams also testifies neither Eaze nor HTH entered into any
contract with Plaintiff.  Adams Decl. at ¶¶ 4,7.  The record
reflects the only contact between Oregon and any Defendant are
the Media Authorizations signed by Plaintiff, an Oregon
corporation, and ByProxie, a Delaware corporation with its
principal place of business in California.

        Plaintiff concedes HTH and Eaze did not have direct
contact with Oregon.  Plaintiff, however, asserts its allegations
that "HTH . . . appointed ByProxie to arrange and execute an
advertising campaign"; "[o]n information and belief, ByProxie was

duly authorized to sign contracts on behalf of HTH"; and that
ByProxie entered into six Media Authorizations with Plaintiff are
sufficient to establish that HTH, via ByProxie, "availed [itself]
of the privilege of doing business in" Oregon.  Plaintiff also
asserts its allegations that "[o]n information and belief Eaze's
acquisition of HTH included its . . . liabilities, including the
liability for the media campaigns" or, in the alternative, that
Eaze has "subsequently used HTH's assets to continue the business
of HTH and, as such, is liable for HTH's liabilities under the
doctrine of successor liability" are sufficient to establish that
Eaze, through HTH, "availed [itself] of the privilege of doing
business in" Oregon.

        HTH and Eaze point out that Plaintiff does not plead
any facts to support its allegation that HTH appointed ByProxie
to arrange and to execute an advertising campaign or that
ByProxie was authorized to sign contracts on behalf of HTH.
Plaintiff also has not produced any evidence of a contract or
agreement between HTH and ByProxie.  As noted, the Media
Authorizations indicate only that ByProxie "*may* be acting as
agent to an advertising customer (Advertiser), and that *if so*,
Advertiser shall guarantee [ByProxie's] payment of all charges,
expenses and costs arising out of all contracts and/or schedules
with OOH owners."  FAC Exs. A at 8, B at 3, C at 7, D at 8,
E at 9, F at 4 (emphasis added).  The Media Authorizations do not

14 - OPINION AND ORDER

name any entities other than ByProxie and Plaintiff, and they are not signed by any other party.  In similar circumstances courts have concluded the plaintiffs did not establish an agency relationship.  *See, e.g., E2 Venture Partners v. RSE Ventures*, No. CV 19-3648 MRW, 2019 WL 6448947, at *3 (C.D. Cal. Sept. 3, 2019)("The text of the written agreement . . . does not mention [the party seeking dismissal] as a party or signatory to the deal," and the allegations "couched in the shielding information-and-belief language . . . are far too cursory and vague to establish an agency relationship that could possibly bind" that party to the contract."); *North v. Samsung SDI Am., Inc.*, No. 5:19-cv-05621-EJD, 2020 WL 1984020, at *4 (N.D. Cal. April 27, 2020)("Plaintiff's allegations are based entirely on information and belief and consist of nothing more than boilerplate legal terms and phrases.  Plaintiff does not allege even a single fact to support the broad allegations of agency."); *Sass v. Or. Dep't of Corr.*, No. 3:17-cv-00983-JE, 2017 WL 7038414, at *1 (D. Or. Dec. 12, 2017)("[C]onclusory allegations, without more, are insufficient to defeat a motion to dismiss for failure to state a claim.").  In addition, courts are not required to accept as true legal conclusions that are set out as factual allegations.  *See, e.g., Bullseye Glass Co. v. Brown*, 366 F. Supp. 3d 1190, 1194 (D. Or. 2019)(a court need not "credit the plaintiff's legal conclusions that are couched as factual allegations"); *Mindlab*

*Media, LLC v. LWRC Intern. LLC*, No. CV 11-3405 CAS (FEMX), 2012
WL 386695, at *4 (C.D. Cal. Feb. 6, 2012)(disregarding legal
conclusions of agency that are unsupported by facts and granting
motion to dismiss); *Malletier v. The Flea Mkt, Inc.*, No. C 09-
01062 CW, 2009 WL 1625946, at *3 (N.D. Cal. June 10, 2009)
(granting motion to dismiss on the ground that "blanket
assertions [of agency] do not provide Defendant with the
requisite fair notice of the factual grounds on which the claim
rests").

In *Williams v. Yamaha Motor Company,* 851 F.3d 1015 (9th
Cir. 2017), the Ninth Circuit reviewed the sufficiency of agency
allegations in the context of a challenge to the court's specific
jurisdiction after the Supreme Court's decision in *Daimler AG v.*
*Bauman*.  The Ninth Circuit noted in *Williams* that when "*Daimler*
voided our agency approach for imputing contacts for the purpose
of general jurisdiction it left open the question of whether an
agency relationship might justify the exercise of specific
jurisdiction." *Williams*, 851 F.3d at 1023 (citing *Daimler*, 134
S.Ct. at 759 n.13).  Notwithstanding *Daimler*, the Ninth Circuit
"assum[ed] . . . some standard of agency continue[d] to be
relevant to the existence of specific jurisdiction." *Id*.  The
Ninth Circuit concluded specific jurisdiction may be based on an
agent's contacts with the forum state only when the "agent act[s]
on the principal's behalf *and* subject to the principal's

control." *Williams*, 851 F.3d at 1024 (quotations and citations

omitted)(emphasis added).  Specifically, the court pointed out

that

> [f]undamental tenets of agency theory require that
> an agent "act on the principal's behalf *and*
> subject to the principal's control."  Restatement
> (Third) Of Agency § 1.01 (2006); *see also Batzel*
> *v. Smith*, 333 F.3d 1018, 1035 (9th Cir. 2003)
> ("Agency requires that the principal maintain
> control over the agent's actions").  Accordingly,
> under any standard for finding an agency
> relationship, the [principal] must have the right
> to substantially control its [agent's] activities.
> *See, e.g.*, *Unocal*, 248 F.3d at 926; *Murphy v.*
> *DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir.
> 2013).

*Williams*, 851 F.3d at 1024-25 (emphasis added).  The Ninth

Circuit noted the appellants in *Williams* "neither allege[d] nor

otherwise show[ed] that [the alleged principal] had the right to

control [the alleged agent's] activities in any manner at all."

*Id.* at 1025.  The Ninth Circuit stated:

> Appellants do allege that "Defendants . . . were
> the agents or employees of each other and were
> acting at all times within the course and scope of
> such agency and employment . . . and are legally
> responsible because of their relationship with
> their co-Defendants."  This is, however, a
> conclusory legal statement unsupported by any
> factual assertion regarding YMC's control over
> YMUS (or regarding any other aspect of the
> parent-subsidiary relationship), and we
> accordingly do not credit it.

*Id*. at 1025 n.5 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).  The Ninth Circuit concluded "even assuming the validity

of some formulation of agency analysis such that a subsidiary's

17 - OPINION AND ORDER

contacts could be attributed to its parent, Appellants failed to
establish specific jurisdiction over YMC." *Id*. at 1025.

In *Juniper Networks, Incorporated v. Andrade* the court
discussed the effect of the Ninth Circuit's decision in *Williams*
regarding specific-jurisdiction analysis in the context of an
alleged agency relationship. In *Juniper* the plaintiff entered
into a contract with a corporation (HTBase) and several of its
shareholders including HTBase's founder and Chief Executive
Officer, Bruno Andrade. No. 20-CV-02360-BLF, 2020 WL 5630023,
at *1 (N.D. Cal. Sept. 21, 2020). Eventually the plaintiff
brought an action for breach of contract against five of the
shareholders, including Andrade, based on alleged
misrepresentations by Andrade. Four of the defendants (foreign
defendants) moved to dismiss the plaintiff's claim against them
based on lack of personal jurisdiction. Specifically, the
foreign defendants asserted the court did not have general
jurisdiction over them because they

> do not own property or bank accounts in
> California, do not pay taxes in California, are
> not licensed or registered to do business in
> California, have no employees in California, do
> not travel to California for business, and do not
> have regular contacts with California or
> California residents as part of their normal
> business operations.

*Id*., at *3. The foreign defendants also asserted the court did
not have specific jurisdiction over them because "they did not
have communications or other dealings directly with [the

18 - OPINION AND ORDER

plaintiff] or any of its representatives in the United States in
connection with the HTBase acquisition, and . . . they executed
the [contract] in Canada . . . and Brazil." *Id.*, at *4.  The
plaintiff conceded the court did not have general jurisdiction
over the foreign defendants, but the plaintiff asserted the court
had specific jurisdiction because the foreign defendants
"purposefully availed themselves of the privilege of doing
business in California through Andrade, asserting that Andrade
acted as the Foreign Defendants' agent both before and after
execution of the [contract]." *Id.*  "Under [its] agency theory,
[the plaintiff] contend[ed] . . . Andrade's contacts with
California may be imputed to the Foreign Defendants." *Id.*  The
court noted it was "not persuaded that the [contract's]
designation of Andrade as the Vendors' Representative satisfies
the *Williams* requirements for agency" when the plaintiff pled
only that

> Defendants, and each of them, were partners, joint
> venturers, agents, employees, alter egos, and/or
> representatives of each other in doing the things
> herein alleged and, in doing so, were acting
> within the scope of their respective authorities
> as agents, employees, and representatives, and are
> jointly and severally liable to [the plaintiff]
> . . . [and] [t]his Court also has jurisdiction
> over all Defendants because, upon information and
> belief, they engaged in intentional conduct,
> either directly or through agents, directed at
> [the plaintiff] that caused harm to [the
> plaintiff] in California.

*Id.*, at *5.  The court noted "the [contract] certainly

19 - OPINION AND ORDER

establishes . . . Andrade acted on the Vendors' behalf in his
role as Vendors' Representative, [however,] it does not establish
that Andrade was subject to the Vendors' control." *Id*., at *6.
The court concluded "[a]bsent some evidence that the Vendors
. . . exercise[d] control over the manner in which Andrade
fulfilled his obligations as Vendors' Representative, . . . [the
plaintiff] has not demonstrated . . . Andrade's contacts with
California may be imputed to the Foreign Defendants." *Id*.  The
court, therefore, concluded the plaintiff "failed to meet its
burden of showing that the Foreign Defendants purposefully
availed themselves of the privilege of doing business in" the
forum state.  *Id*.

        Unlike the plaintiff in *Williams*, Plaintiff here fails
to allege any facts to support its allegation that ByProxie was
HTH's agent or that ByProxie was authorized to bind HTH to a
contract.  Plaintiff does not plead facts to support its
allegation that ByProxie acted on HTH's behalf.  In addition,
like the plaintiffs in *Juniper* and *Williams,* Plaintiff here has
not pled HTH had a right to control ByProxie's actions.
Plaintiff also fails to plead facts to support its allegation
that Eaze assumed HTH's liabilities or would be liable as HTH's
successor.  The Court, therefore, concludes Plaintiff's
allegations that ByProxie acted as HTH's agent are insufficient
to plead purposeful availment by HTH or Eaze because Plaintiff

has not pled any facts on which the Court could find HTH and, in turn, Eaze could be liable to Plaintiff as agents, guarantors, or parties to Plaintiff's Media Agreements with ByProxie. *See Drury v. Assisted Living Concepts, Inc.*, 245 Or. App. 217, 224 (2011) ("[E]ven when, unlike here, a third party is the subject of a contract and explicitly benefits from it, there must still be a manifested assent to be bound by the agreement because to hold otherwise is to allow contracting parties to alter the rights of a third party . . . without regard for whether the third party deems that consideration to be an adequate exchange for the contractual obligations.")(quotations omitted)).

**B. Arising Out Of or Relating to Defendants' Forum Contacts**

"Under the second prong of [the specific] jurisdiction analysis, the plaintiff's claim must be one which arises out of or relates to the defendant's forum-related activities." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). When "determining whether [a plaintiff's] claims arise out of [a defendant's] forum-related conduct, the Ninth Circuit follows the 'but for' test." *Id*. (citation omitted). Thus, Plaintiff here "must show [it] would not have suffered an injury 'but for' [HTH and Eaze's] forum-related conduct." *Id*. As noted, Plaintiff does not identify any activity of HTH or Eaze in Oregon that gave rise to Plaintiff's alleged injury.

Accordingly, the Court concludes on this record that

21 - OPINION AND ORDER

Plaintiff's claims against HTH and Eaze do not arise out of nor
are they related to any activity between Plaintiff and HTH or
Eaze in Oregon.

     **C.    Reasonable and Fair to Assert Jurisdiction.**

     Because the Court concludes Plaintiff has not met its
burden as to **either of** the first two factors required to
establish specific jurisdiction over HTH and Eaze, the Court need
not address the third factor. *See, e.g., Schwarzenegger*, 374
F.3d at 802 ("If the plaintiff fails to satisfy either of the[]
[first two] prongs, personal jurisdiction is not established in
the forum state.").


**CONCLUSION**

     For these reasons, the Court **GRANTS** the Motion (#20) of Eaze
Technologies Inc. and Hometown Heart to Dismiss Plaintiff's First
Amended Complaint and **DISMISSES** Plaintiff's First Amended
Complaint as to HTH and Eaze **without prejudice.**

     The Court **GRANTS** Plaintiff leave to file a Second Amended
Complaint **no later than March 25, 2021,** to amend its agency
assertions consistent with this Opinion and Order to the extent
that Plaintiff is able to do so.  If Plaintiff does not file a
Second Amended Complaint by March 25, 2021, this matter will
proceed on Plaintiff's First Amended Complaint only as to

Defendants ByProxie and Herban.

     IT IS SO ORDERED.

     DATED this 26th day of February, 2021.


                         /s/ Anna J. Brown

                  _____
                  ANNA J. BROWN
                  United States Senior District Judge

23 - OPINION AND ORDER