Nicholas M. M. Drum, OSB #063167
Dayna J. Christian, OSB #973360
Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, Oregon 97209
Phone: (503) 802-5533
E-Mail: nick.drum@immixlaw.com
E-Mail: dayna.christian@immixlaw.com

Attorneys for Plaintiff Billups, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| BILLUPS, INC., an Oregon corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>AMBASSADOR TECHNOLOGIES, INC. dba BYPROXIE, a foreign corporation; HOMETOWN HEART, a foreign corporation; EAZE TECHNOLOGIES INC., a foreign corporation; and HERBAN INDUSTRIES CA LLC, a foreign limited liability company,<br><br>    Defendants. | Case No.: 3:20-CV-00891-BR<br><br>**PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>*Oral Argument Requested* |

Page i – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE
TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II. LR 7-1 CERTIFICATION ............................................................................. 2

III. STATEMENT OF FACTS ........................................................................... 3

    A. Background Facts ..................................................................................... 3

    B. Procedural History .................................................................................. 7

IV. STANDARDS ................................................................................................ 8

V. ARGUMENT .................................................................................................. 10

    A. Plaintiff's pleadings and evidence show that HTH purposefully availed itself of the privilege of conducting business in Oregon. ...................................... 10

        1. Chill was a consolidated enterprise operated by Herban and its two subsidiaries, HTH and Herban CA. ..................................................... 12

            a. Chill began as a partnership between Herban and HTH. .............. 13

            b. HTH was, at all times material, Herban's wholly controlled subsidiary. ........................................................................................ 13

            c. Chill was the consolidated enterprise of Herban and its subsidiaries, HTH and Herban CA. ............................................... 15

        2. HTH's role in the consolidated enterprise of Chill was to serve as the retailer of record. ........................................................................... 17

            a. Gourmet Green Room ................................................................. 17

            b. Eaze previously alleged that Dyme, Herban, Herban CA, and HTH were engaged in a consolidated enterprise for the benefit of Chill. ........................................................................... 18

         3. ByProxie acted as HTH's agent and subject to its control. ............... 20

            a. HTH authorized ByProxie to act as its agent and exercised control over ByProxie. ............................................................... 20

            b. ByProxie's agency relationship with HTH was also established by Herban, acting as HTH's manager. ....................... 21

    B. Plaintiff's claim arises out of HTH's forum-related activity, as it was HTH's agent that obtained Plaintiff's advertising services and, failed to pay for the same. ..................................................................................... 22

    C. Defendants cannot show that the assertion of specific jurisdiction in Oregon is unreasonable. ......................................................................... 23

        1. Extent of the Defendant's purposeful interjection into the forum state's affairs. ................................................................................... 23

        2. Burden on the Defendant of defending in the forum. ....................... 24

        3. Conflict with the sovereignty of the Defendant's state. .................... 25

        4. The forum state's interest in adjudicating the dispute. ..................... 25

        5. The most efficient judicial resolution of the controversy. ............... 25

        6. The importance of the forum to the Plaintiff's interest in convenient and effective relief. ........................................................................... 26

        7. The existence of an alternative forum. ............................................. 26

    VI. CONCLUSION ......................................................................................... 29

Page ii – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE
TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

# TABLE OF AUTHORITIES

**Cases**

*Borgert v. Spurling et al.*,
    191 Or. 344 (1951)......................................................................................... 19

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)............................................................................... 10, 23

*CE Distrib., LLC v. New Sensor Corp.*,
    380 F.3d 1107, 1112 (9th Cir. 2004) ............................................................ 25

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
    905 F.3d 597 (9th Cir. 2018) ........................................................................ 24

*Gonzalez v. Std. Tools & Equip. Col.*,
    270 Or. App. 394 (2015) ............................................................................... 28

*Helicopter Transp. Servs., LLC v. Sikoosky Aircraft Corp.*,
    253 F. Supp. 3d 1115 (D. Or. 2017) ............................................................. 26

*Helicopteros Nacionales de Columbia, S. A. v. Hall*,
    466 U.S. 408 (1984)...................................................................................... 26

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)........................................................................................ 9

*Lake v. Lake*,
    817 F.2d 1416 (9th Cir. 1987) ....................................................................... 9

*Menken v. Emm*,
    503 F.3d 1050 (9th Cir. 2007) ..................................................................... 22

*Moore v. Gulf Atlantic Packaging Corp.*,
    2016 WL 8231142 (Nov. 29, 2016)............................................................. 27

*Nike, Inc. v. Lombardi*,
    732 F. Supp. 2d 1146 (D. Or. 2010) ............................................................ 25

*Ochoa v. J.B. Martin and Sons Farms, Inc.*,
    287 F.3d 1182 (9th Cir. 2002)................................................................ 12, 29

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ..................................................................... 8, 23

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990) ....................................................................... 8

**Rules**

LR 7-1 ...................................................................................................................... 2

Page iii – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE
TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

Plaintiff Billups, Inc. ("Billups" or "Plaintiff") submits the following response to the Motion to Dismiss the Second Amended Complaint ("Motion") filed by Defendants Eaze Technologies Inc. ("Eaze") and Hometown Heart ("HTH," and together with Eaze, "Defendants"). Plaintiff has adequately set forth specific facts demonstrating that Defendants are subject to jurisdiction in this Court. Put simply, Plaintiff's Second Amended Complaint alleges specific facts showing that Ambassador Technologies, Inc. ("ByProxie") acted on behalf of HTH and subject to its control. Plaintiff similarly alleges that Eaze is liable both for its substantial activities in Oregon and as the successor of HTH, and is therefore subject to general and specific jurisdiction in Oregon to the same extent as HTH. These allegations are supported by ample evidence, as discussed below. Plaintiff has established a prima facia case for this Court to exercise jurisdiction over Defendants. For the reasons set forth below, Defendants' Motion must be denied.

## I. INTRODUCTION

In response to this Court's Opinion and Order dated February 26, 2021, Dkt. 42, ("Order"), Plaintiff filed a Second Amended Complaint ("Second Am. Compl."), on March 25, 2021. Dkt. 43. Plaintiff pled that HTH purposefully availed itself of specific Oregon jurisdiction by and through its agent, ByProxie, who, at all times material, acted on HTH's behalf and subject to HTH's control. HTH and Eaze, in filing this Motion, challenge Plaintiff's factual allegations by presenting a thin declaration and daring Plaintiff to produce some evidence to support its allegations that the cannabis sales and delivery brand known as "Calichill" and later "Chill" ("Chill") was the consolidated enterprise of Herban and its subsidiaries, HTH, and Herban CA, that HTH was the retailer of record for Chill, and

Page 1 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

ultimately, that ByProxie was, in fact, acting as HTH's agent. Plaintiff will now demonstrate in the attached declarations, that it has substantial evidence to support these allegations. In light of this evidence, Plaintiff's allegations in the Second Amended Complaint, as supported, establish a *prima facie* case for specific jurisdiction and defeats Defendants' Motion. HTH and, in turn, its successor Eaze, have purposefully availed themselves of specific jurisdiction in Oregon. Defendants' Motion must be denied.

## II.  LR 7-1 CERTIFICATION

At the outset, Plaintiff takes issue with Defendants' certification under LR 7-1, which requires the parties to make "a good faith effort through personal or telephone conferences to resolve the dispute." LR 7-1.

Plaintiff's counsel agrees that its counsel spoke with Defendants' counsel, Ms. Anderson-Dana, on April 21, 2021. *Declaration of Nicholas M. M. Drum in Support of Plaintiff's Response to Defendants Hometown Heart and Eaze Motion to Dismiss the Second Amended Complaint* ("Drum Decl.") ¶2. Defendants' counsel asserted that the Second Amended Complaint lacked specific facts showing how HTH controlled ByProxie in its dealings with Plaintiff. *Id.* Plaintiff's counsel responded that, while Plaintiff believed that the stated facts were sufficient, he was happy to seek leave to amend and file a Third Amended Complaint, in which Plaintiff could provide even greater detail. *Id.* ¶3. Specifically, Plaintiff was willing to sharpen its pleadings as to HTH, and allege that Evan Tennenbaum, then owner of HTH and a corporate officer of non-party Dionymed Brands, Inc. ("Dyme"), along with his team, directly approved of ByProxie's dealings with Plaintiff. *Id.* Plaintiff's counsel indicated that he had interviewed witnesses who could support the claim that Evan Tenenbaum and/or

Page 2 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE
TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

members of his team at HTH: (a) received Plaintiff's Media Authorizations and authorized ByProxie to sign the same, (b) received Plaintiff's regular invoices from ByProxie and approved the same, (c) directed ByProxie on the media campaign that ByProxie was coordinating with Plaintiff, and (d) attended no less than monthly meetings with ByProxie to go over the state of the media campaign and the cost thereof. *Id.*

Prior to filing a Third Amended Complaint, Plaintiff asked Defendants' counsel if there were any other issues that should be addressed in the Third Amended Complaint so that the Parties could avoid another motion to dismiss and move beyond this stage in the litigation. *Id.* ¶4. Defendants' counsel said that she would think about it and reply soon. *Id.* The next day, Defendants filed this Motion, without any further correspondence with Plaintiff. *Id.* ¶5.

Defendants' conferral was not a genuine effort to resolve this matter prior to involving the Court, as required by LR 7-1. Conferring on a motion should not be a mere procedural speed bump on the way to filing an already drafted motion. These are expensive motions, consuming the Parties' time and, importantly, the Court's valuable resources. Defendants' Motion should not have been filed and is unnecessary. As discussed below, Plaintiff believes that its Second Amended Complaint is sufficient. However, to the degree that the Court believes that deficiencies remain, Plaintiff would reiterate the position it took with Defendants: namely, that it can file an amended complaint with even greater factual specificity if needed.

### III.  STATEMENT OF FACTS

#### A.    Background Facts

This case arises from the implosion of Dionymed Brands Inc. ("Dyme") a Canadian publicly traded cannabis company that was placed into receivership via the Supreme Court of

Page 3 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

British Columbia in Bankruptcy and Insolvency Case No. S1912098 ("Receivership").[1] Prior to the Receivership, Dyme appeared to be a powerhouse in the cannabis industry, with substantial market power. Dan Mitchell, Nickeled and Dymed, East Bay Express, Jan. 22, 2020.[2] Reporter Dan Mitchell, who covered the Receivership, explained it succinctly:

> [Dyme] had its fingers in several different parts of the business—cultivation, manufacturing, distribution, sales technology, home deliver—in several different states. And it went by a whole bunch of different names, including subsidiaries, brands, and names of acquired companies: DionyMed, DYME Distribution, Herban Industries, Rise Logistics, Winberry Farms, HomeTown Heart, Chill, and others. . . .
>
> It's far from unique for a diversified company to employ a multitude of different brand names, and there's nothing inherently nefarious about it. Many cannabis companies in particular do that. But after such a company implodes, the plethora of entity names can make the legal mop-up operations that much more challenging, and that panoply of names look a little less like marketing and a little more like subterfuge.

Id. (emphasis added). This Motion is about that subterfuge.

The Court is familiar with the undisputed facts. Billups, an Oregon advertising company, entered into six contracts with ByProxie "Media Authorizations," under which it agreed to promote Chill through an out-of-home media campaign from May 1, 2019 – December 29, 2019 ("Campaign"). Second Am. Compl. ¶¶25, 28, 31. Plaintiff fully performed under the Media Authorizations, but has not been paid $1,159,526.77 plus interest. Id. ¶¶102-104. Plaintiff filed this suit and is attempting to collect for the promotional services that it provided Chill, which Plaintiff has now come to understand was a consolidated enterprise of three entities. As Plaintiff tries to collect from HTH and its parent Eaze, their attorneys move

---

[1] While Dyme was placed into receivership, and its assets subsequently sold to Eaze, Herban, Herban CA, and HTH were not placed into receivership or bankruptcy.

[2] https://eastbayexpress.com/nickeled-and-dymed-1/

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

to dismiss, repeatedly, on the grounds that Plaintiff has no evidence to connect HTH with ByProxie. As discussed below, Plaintiff has ample evidence to make this connection. HTH was a wholly controlled subsidy and an integral part of the consolidated enterprise known as Chill.

Dyme was a Canadian holding company that organized its business in the United States under Herban, a Delaware company. *Second Am. Compl.* Ex G; *see also Declaration of Edward Fields in Support of Plaintiff's Response to Defendants' Motion to Dismiss the Second Amended Complaint* ("Fields Decl.") ¶3. Dyme's flagship offering was a cannabis sales and delivery service known as Calichill and, later, Chill. *Second Am. Compl.* ¶¶16-17, *see also Fields Decl.* ¶7. Chill offered customers a seamless cannabis acquisition experience. *Id.* Chill's cannabis service was as follows. First, Chill's customers would buy cannabis products online ("Chill Sales") at www.calichill.com and, later, www.orderchill.com ("Chill Website"). *Second Am. Compl.* ¶16. Second, Chill would then deliver the cannabis to Chill customers via Chill-branded delivery agents ("Chill Deliveries"). *Id.*

Dyme split the various components of Chill into different entities. *Id.* ¶¶17-20, *see also Fields Decl.* ¶¶7-9. Herban CA, which was licensed by the California Bureau of Cannabis Control ("BCC") to manufacture and distribute cannabis products, was the manufacturer and distributor of certain products offered on the Chill Website. *Id.* HTH, which was licensed by the BCC to sell and deliver cannabis products, handled the Chill Sales and Chill Deliveries. *Id.* Each of these three entities accomplished an essential part of Chill's ultimate customer-facing service.

Page 5 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

While Chill's various components were divided between three entities, the entities were collectively managed by Herban and run as one united operation. Herban was the 100% owner of Herban CA. *Fields Decl.* ¶6. Further, Herban had total control over HTH through a Master Services Agreement, in which Herban took full control over HTH's management, finances, branding, and marketing. *Id.* ¶7.

Herban, acting as manager and controller of Herban CA and HTH, engaged ByProxie to coordinate an out-of-home advertising campaign for Chill. *Second Am. Complaint* ¶¶22-23; *see also Fields Decl.* ¶¶11, 16.[3] On May 1, 2019, Herban and ByProxie signed a Consulting Services Agreement ("CSA"), under which ByProxie agreed to provide certain marketing deliverables to "Herban, its parents, subsidiaries, and affiliates" which included HTH and Herban CA. *Second Am. Complaint* ¶¶22-23; *see also Fields Decl.* ¶11, Ex A.

In addition to being paid its costs, ByProxie agreed to be paid a portion of HTH's revenue from Chill Sales. *Second Am. Compl.* ¶¶22-23; *see also Fields Decl.* ¶¶12, 14. The CSA makes it clear that ByProxie would be paid out of the revenue received from Chill Sales.[4] *Fields Decl.* ¶11, Ex A. Since all Chill Sales were accomplished through HTH—Chill's retail arm—HTH's revenue would be used to pay ByProxie and, ultimately, Plaintiff. *Second Am. Complaint* ¶23; *see also Fields Decl.* ¶12. While HTH had delegated all control over HTH's

---

[3] Notably, ByProxie itself was intertwined with Herban, as its CEO was Zoe Fields, daughter of Dyme's CEO Edward Fields. *Second Am. Complaint* ¶34.

[4] For example, ByProxie had the ability to earn an incentive fee of $75 per new qualified customer that signed up with Chill during the media campaign that ByProxie coordinated with Plaintiff. *Fields Decl.* ¶11, Ex A. A qualified customer was expressly defined as "a person . . . has registered a user profile on www.orderchill.com, and has made a minimum $55 purchase net of discounts." *Id.* In other words, ByProxie's fee was the result of Chill Sales.

Page 6 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

branding and marketing to Herban, and therefore could not object to the CSA, HTH fully consented to and endorsed the CSA. *Second Am. Complaint* ¶23; *see also Fields Decl.* ¶13 .

In reliance on the CSA, ByProxie engaged Plaintiff to run an out-of-home media campaign from May 2019 – December 29, 2019. *Second Am. Compl.* ¶25. Plaintiff arranged for Chill's promotional materials to be displayed on billboards, bus stops, and other media locations in California ("Campaign"). *Id.* ¶¶25-26, 31. ByProxie engaged Billups by signing six contracts for services, each entitled "Media Authorizations." Prior to signing, ByProxie sent these Media Authorizations to HTH and Herban for approval, which it received from HTH and Herban. *Second Am. Compl.* ¶25; *see also Fields Decl.* ¶14. Herban and HTH, knowing that they were fully liable to pay Plaintiff's invoices under the CSA, monitored ByProxie's financial commitments to Plaintiff, reviewed Plaintiff's invoices, and directed ByProxie on the details of the Campaign. *Second Am. Compl* ¶30; *see also Fields Decl.* ¶14.

Plaintiff fully performed on the Campaign, but has not been paid $1,159,526.77 on its invoices. *Second Am. Compl.* ¶101.

## B.    Procedural History

On June 3, 2020, Plaintiff filed suit against ByProxie, HTH, and Eaze in this Court, and asserted jurisdiction pursuant to the Media Authorizations, which each state that "the parties expressly consent to jurisdiction and venue in the State of Oregon." *Second Am. Compl. Dkt. 43* at Ex A, p. 10. Since that time, Plaintiff has had to come up to speed on the "subterfuge" of Dyme's structure. Plaintiff has learned that ByProxie was acting on behalf of HTH as well as other entities used by Dyme in furtherance of its multi-tiered cannabis activities in the United States. Plaintiff subsequently filed a First Amended Complaint which added Defendant Herban

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

Industries CA LLC ("Herban CA"). Plaintiff has taken a default against Defendants ByProxie and Herban CA and, will move for a default against Defendant Herban Industries Inc. ("Herban").

On October 19, 2020, Defendants filed a motion to dismiss the First Amended Complaint for lack of personal jurisdiction. Dkt. 20. On February 26, 2021, the Court granted that motion, but also granted Plaintiff leave to amend its First Amended Complaint. Dkt. 42. On March 25, 2021, Plaintiff filed its Second Amended Complaint, which added Herban and alleged that Chill was the consolidated enterprise of Herban, Herban CA, and HTH, who authorized ByProxie to sign the Media Authorizations and exercised control over ByProxie as it dealt with Plaintiff. *Second Am. Compl.* ¶8. Defendants filed their second motion to dismiss for lack of personal jurisdiction, this time asking for dismissal with prejudice, on April 22, 2021. Dkt. 49.

For the reasons stated below, Plaintiff's allegations, which are supported by ample evidence and as argued below, must be accepted as accurate and construed in Plaintiff's favor. These allegations, as supported, demonstrate that HTH and Eaze are subject to the jurisdiction of this Court. As such, Defendants' Motion fails.

## IV.  STANDARDS

When a defendant, as here, moves to dismiss a complaint for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004),citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Defendants' Motion is based "on written materials rather than an evidentiary hearing." *Schwarzenegger,* 374 F.3d at 800. Accordingly,

Page 8 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

in order to defeat this Motion, Plaintiff only needs to make "a prima facie showing of jurisdiction facts." *Id.* In determining whether a *prima facie* showing has been made, the Court need only look to Plaintiff's "pleadings and affidavits." *Id.* Plaintiff's threshold is low. The Court must accept "uncontroverted allegations in the complaint" as true, and all conflicts between Defendants' and Plaintiff's affidavits "must be resolved in the plaintiff's favor." *Id.*

For this court to exercise personal jurisdiction over nonresident Defendants, Plaintiff must make the showing that Defendants have "at least minimum contacts" with Oregon, and that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.*, quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Plaintiff asserts that HTH is subject to specific jurisdiction in Oregon. The Ninth Circuit applies the following three-part test for "analyzing a claim of specific personal jurisdiction":

1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Id.* at 802, quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

Plaintiff's burden is to satisfy "the first two prongs of the test" after which the burden shifts to Defendants, who must "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

As discussed below, Plaintiff's pleadings and affidavits clearly show that HTH purposefully availed itself of jurisdiction in Oregon by authorizing its agent ByProxie to act on its behalf in signing the Media Authorizations. HTH further actively controlled ByProxie's engagement with Billups both directly and through its manager Herban. As discussed at the end of this response, Eaze is subject to both specific and general jurisdiction. Eaze is liable for the debts of HTH under Oregon's theory of successor liability. Since HTH is subject to specific jurisdiction in Oregon, Eaze is as well. Beyond this, Eaze, which was operating in Oregon at the time of the operative facts in the Second Amended Complaint, is subject to general jurisdiction in Oregon.

## V.  ARGUMENT

Subparts A - C below demonstrate that, under the Ninth Circuit's three prong analysis, it is proper to assert specific jurisdiction over HTH. After this discussion, Subpart D makes a concise showing that Eaze is subject to jurisdiction in this Court under both theories of general jurisdiction and specific jurisdiction.

### A.    Plaintiff's pleadings and evidence show that HTH purposefully availed itself of the privilege of conducting business in Oregon.

The first prong of the Ninth Circuit's test for specific jurisdiction requires Plaintiff to make a *prima facie* showing that Defendants purposefully availed themselves of the privilege

of conducting activities in Oregon. In furtherance of this prong, Plaintiff pled specific facts showing that ByProxie, who reached out and obtained Plaintiff's services, acted on behalf of Defendants and subject to their control.

Plaintiff can establish an agency relationship between ByProxie and HTH in two ways. First, HTH, by its own actions, directed ByProxie to act on its behalf. Second, Herban, acting as HTH's manager, established an agency relationship between HTH and ByProxie.

Plaintiff's Second Amended Complaint pleads both of these theories. Plaintiff pled that HTH had an agency relationship with ByProxie through the following direct actions:

- Prior to signing the Media Authorizations, ByProxie sent the same to HTH, who reviewed them and authorized ByProxie to sign the same. *Second Am. Compl.* ¶25.

- ByProxie regularly met, no less than monthly, with HTH throughout the Campaign to go through ByProxie's financial commitments to Plaintiff, and otherwise receive HTH's guidance on the Campaign. *Id.* ¶¶28, 33.

- HTH "regularly provided input and direction on the content and the Campaign to ByProxie over the course of the Campaign, and ByProxie adhered to the same." *Id.* ¶33.

- "ByProxie would regularly send [Plaintiff's] invoices to HTH and Herban for their review, approval and payment." *Id.* ¶28.

Plaintiff also pled that HTH's agency relationship with ByProxie was established by the actions of Herban. Herban, on HTH's behalf and pursuant to the powers it had under the Master Services Agreement with HTH ("MSA"), engaged ByProxie under the CSA and

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

arranged for marketing for HTH under the Chill brand. *Id.* ¶¶5-6, 22-24, 30-32. Herban's actions, which clearly engaged ByProxie to promote Chill, were taken on behalf of HTH.

Defendants do not argue that Plaintiff's Second Amended Complaint is deficient. Instead, Defendants present evidence challenging three specific allegations: (1) "that ByProxie acted as HTH's agent," (2) that Herban, Herban CA, and HTH acted as a consolidated enterprise, and (3) that HTH was the retailer of record for Chill. *Motion* 2-4. All Plaintiff must do at this juncture is submit some evidence to support its allegations. That evidence must be "construed in the light most favorable to [P]laintiff, and all doubts are resolved in [its] favor." *Ochoa v. J.B. Martin and Sons Farms*, *Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002).

In order to maximize clarity, Plaintiff's presentation of evidence will take HTH's challenges out of order. Plaintiff will first present evidence that Herban, Herban CA, and HTH acted as a consolidated enterprise. Second, Plaintiff will show its evidence supporting the allegation that HTH was the retailer of record. Third, Plaintiff will present evidence that ByProxie acted as HTH's agent. Plaintiff's evidence comes from (a) the publicly available files of the Dyme Receivership in the Supreme Court of British Columbia and (b) the declaration of Edward Fields, who was both CEO and Chairman of the Board of Dyme in 2018 and 2019.

### 1. Chill was a consolidated enterprise operated by Herban and its two subsidiaries, HTH and Herban CA.

HTH was a wholly controlled subsidiary of Herban in 2019 and Herban used HTH to provide essential and integral functions for the operation of Chill. These are not merely "vague and conclusory allegations meant to appear factual," as Defendants maintain, but are supported by the following facts. *Motion* 3.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

### a. Chill began as a partnership between Herban and HTH.

From the beginning, even before Dyme acquired HTH, Chill was a joint effort of Herban and HTH. *Fields Decl.* ¶4. Plaintiff has obtained Dyme's Annual Information Report for 2018, dated May 31, 2019 ("Dyme Report") from the publicly available file of the Supreme Court of British Columbia in Bankruptcy and Insolvency for the Receivership.[5] *See Drum Decl.* Ex B, p. 19-107. The Dyme Report states that Chill began in August 2018 as a "partnership" between itself and HTH: "[i]n August 2018, in partnership with HomeTown, [Dyme] launched a direct-to-consumer e-commerce storefront for same-day delivering in the San Francisco Bay Area." *Id.* at Ex B, p. 41. This "e-commerce storefront" was Chill. *Fields Decl.* ¶4. In other words, per Dyme's corporate records, HTH and Dyme (by and through its subsidiary Herban) were the founding members of the "partnership" known to the public as Chill. *Drum Decl.* Ex B, p. 41. As discussed below, Dyme went on to buy HTH, which it then wholly controlled in furtherance of Chill.

### b. HTH was, at all times material, Herban's wholly controlled subsidiary.

When Dyme purchased HTH, the partnership of Chill turned into a consolidated enterprise that was run by Herban and its subsidiaries, HTH and Herban CA. *Fields Decl.* ¶8. Plaintiff has specifically traced how this consolidated enterprise came to be. First, Dyme purchased HTH. Second, Dyme set up a system whereby Herban wholly controlled HTH. Third, HTH's finances were wholly intertwined with Herban and Dyme's. Each of these steps is explained below.

---

[5] The Dyme Report is included as Exhibit "A" to the Affidavit of Yana Kislenko, on behalf of Glas Americas LLC ("Glas"), the collateral agent under Dyme's loan agreements.

Page 13 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

First, Dyme purchased HTH. On October 1, 2018, Dyme obtained the "right, but not the obligation, to purchase the outstanding shares of [HTH] for $6,000,000 plus a $12,000,000 earnout, which would be paid subject to [HTH] achieving certain performance metrics." *Drum Decl.*, Ex B, p. 32. Dyme exercised that option on December 5, 2018. *Id.* However, Dyme "transferred all of the Hometown Shares to a single individual who was a former owner of shares of Hometown in consideration for the grant of an irrevocable option … to re-acquire the Hometown Shares for a nominal amount following the receipt of all required regulator approvals." *Id.* Per the Second Report of FTI Consulting Canada Inc. in the Capacity of Receiver of Dionymed Brands Inc. ("Second Receivership Report"), those shares were transferred to Evan Tenenbaum. *Id.* at Ex C, p. 109.

Second, Dyme arranged for Herban to wholly control HTH. While Dyme transferred the shares to Evan Tenenbaum, it retained control over HTH. On December 5, 2018, Dyme's subsidiary Herban entered into the MSA with HTH . *Id.* at Ex B, p. 32. Under the MSA, Herban gained the right to "exercise[] control over Hometown." *Id.* Herban's rights under the MSA allowed it to provide HTH "with management, labor administration, marketing, branding, professional, banking, record-keeping, intellectual property, governance, and other services." *Id.* This is aptly demonstrated on Exhibit G to the Second Amended Complaint, a diagram of Dyme's corporate structure taken from the Receiver's Second Report. *Drum Decl.* Ex C, p. 22. It shows that HTH is a subsidiary of Herban and that Herban controls HTH "100% (through Master Services Agreement)." Defendants do not dispute the accuracy of this chart. *Motion* 11, ft. 3.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

Third, HTH's finances were wholly absorbed into Dyme and Herban. The Dyme Report makes it clear that Dyme was able "to obtain profits from Hometown . . . under the MSA." *Drum Decl.*, Ex B, p. 28. Further, in December 2018, Dyme "consolidated the accounts of Hometown in its consolidated financial accounts since December 13, 2018." *Id.* In other words, HTH's accounts and accounting were subsumed into Dyme from December 2018 onward. One month later, in January 2019, Dyme signed a credit agreement for a $13,000,000 term loan. HTH, Herban CA, and Herban all signed as "Credit Parties" who were liable for this loan. *Id.* at p. 5. HTH was fully liable for Dyme's major debt, the same debt that, when defaulted, ended in the Receivership. HTH was not some distant unrelated entity. It was another corporate form controlled by Dyme.

In short, Plaintiff's evidence shows that in 2019, Herban wholly controlled HTH's management, finances, branding and marketing. As such, it stands to reason that Herban utilized HTH and Herban CA to advance Dyme's flagship offering: Chill.

### c. Chill was the consolidated enterprise of Herban and its subsidiaries, HTH and Herban CA.

Herban operated HTH and Herban CA collectively for the benefit of Chill. *Fields Decl.* ¶¶8-10. As discussed in the Statement of Facts above, Chill's service had three different integral components: an e-commerce platform, product manufacture and distribution, and sales and delivery. *Fields Decl.* ¶8. These three components were handled by three entities. *Id.* Herban CA managed product manufacturing and distribution, and HTH managed sales and delivery. *Id.*

The consolidated enterprise is further apparent from Chill's licensure in 2018-2019, as discussed in the Dyme Report. The report shows that Dyme utilized Herban CA for

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

manufacturing and distribution. Indeed, Herban was licensed in 2019 under BCC licenses that allowed it to manufacture and distribute adult-use and medicinal cannabis products.[6] *Drum Decl.* Ex B, p. 59.

However, per the Dyme Report, Dyme's licenses to *sell* cannabis in California were held by HTH: BCC License No.'s A9-18-0000032-TEMP and A9-17-0000005-TEMP. *Id.* These licenses were both Type 9 Non-Storefront Retail for Adult-Use and Medicinal Cannabis Products. *Id.* It was HTH's licenses that authorized the sale and delivery of cannabis through the Chill website. *Fields Decl.* ¶¶8-9. HTH was "the retailer arm of Chill." *Id.*

Put simply, the Chill Website sold Dyme's products. *See Drum Decl.* Ex B, p. 42 ("The Company's products are currently sold online through the Company's website (www.calichill.com)."). In order to manufacture and distribute those products in California, Herban had to utilize Herban CA's licenses. *Id.* at 59; *Fields Decl.* ¶6. In order to effectuate those sales and deliver the product in California, the Company needed a non-storefront retail license, which was supplied by HTH, its wholly controlled subsidiary. *Drum Decl.* Ex B, at 42, 59; *Fields Decl.* ¶¶8-9. As such, Chill, which sold and delivered Dyme's Cannabis products, was the consolidated enterprise of Herban, Herban CA, and HTH. *Fields Decl.* ¶8.

---

[6] Specifically, Herban CA was licensed as a distributor under BCC License No.'s M11-18-0000061-TEMP and C11-18-000024-TEMP. Herban CA was licensed as a manufacturer of cannabis products under BCC License No. CDPH-10002509. *See Drum Decl.* Ex B, p. 59.

Page 16 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

## 2.    HTH's role in the consolidated enterprise of Chill was to serve as the retailer of record.

The Motion challenges Plaintiff to produce evidence that HTH was the retailer of record for Chill and that all Chill Sales were accomplished under HTH's licensure. *Motion* 4-5. This is well documented in the Dyme Report:

> "The Company provides the software and technology on behalf of HomeTown through a services agreement and HomeTown is the <u>retailer-of-record</u>, providing the delivery and fulfillment service"

*Drum Decl.*, Ex B, p. 32 (emphasis added).

Former Dyme CEO, Edward Fields confirms that, in Spring 2019, Chill accomplished sales by and through the retail licenses of HTH. *Fields Decl.* ¶9. Further, Herban, as the manager of HTH's finances, then had authority under the MSA to direct HTH's revenue as it saw fit. *Id.* ¶10.

Dyme's corporate records, together with the declaration of Mr. Fields both confirm that Chill was a consolidated enterprise made up of Herban and at least two of its subsidiaries; HTH and Herban CA. *Fields Decl.* ¶8. Herban utilized Herban CA and HTH to provide essential integral functions of Chill, namely the distribution of product and the sale and delivery of product. *Id.* ¶¶6-8. Plaintiff has produced evidence showing that HTH was the retailer arm of Chill and, as such, was used to accomplish Chill Sales. *Fields Decl.* ¶¶8-9.

### a.  Gourmet Green Room

Defendants object that they could not have been the retailer of record for any Chill Sales that occurred in the Los Angeles area, and insist that another Herban subsidiary, Gourmet Green Room was responsible for those sales. *Motion* 5. This is an irrelevant contention for the

Page 17 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

purposes of this Motion. First, it implicitly concedes that HTH was, in fact, the retailer of record for all Chill Sales in the Bay Area. This alone confirms Plaintiff's contention that HTH served as an essential part of the consolidated enterprise of Chill. Second, even if this is true, it does not somehow deprive this court of jurisdiction over HTH. This irrational argument is akin to a bank robber claiming that he should not be charged because the police had not yet caught his accomplices. At most, HTH's allegation would suggest that Plaintiff may add yet another defendant to the caption, but that would not justify dismissing HTH. HTH is welcome to assert a cross claim against Gourmet Green Room. Third, this is a fact question that will need to be fully explored in discovery, after HTH has finally filed an Answer in this case.

> **b. Eaze previously alleged that Dyme, Herban, Herban CA, and HTH were engaged in a consolidated enterprise for the benefit of Chill.**

Notably, Eaze cannot credibly deny that Herban and HTH were acting in unison for the benefit of Chill, as they alleged the same fact in 2019.

Recall that Plaintiff was engaged to promote Chill starting May 1, 2019. On June 4, 2019, Herban CA filed suit against Eaze in Superior Court of the State of California County of San Francisco Case No. CGC-19-576443 ("Eaze Litigation"). Eaze filed a cross-complaint against Dyme, Herban CA, and HTH, suing each of them jointly and severally for tortious interference with prospective economic advantage and unfair competition. *Drum Decl.*, Ex D. Eaze alleged that, after Dyme bought HTH, it forced HTH to breach a prior contractual relationship that HTH had with Eaze so that HTH could work exclusively as part of Chill—an Eaze competitor. *Id.* ¶¶4-6, 39, 45. Strikingly, Eaze pled that HTH, Dyme, and Herban "acted jointly, in <u>concert with knowledge of the actions of each of the other Cross-Defendants</u>." *Id.* ¶16 (emphasis added).

Page 18 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE
TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

Eaze alleged that Dyme "and its subsidiaries—including both Herban and Hometown Heart—have resorted to unfair business practices to harm Eaze and beg, borrow, and steal Eaze's partnership and consumers for their alternative platform" which was Chill. *Id.* ¶10. Eaze complained that, on Dyme's instruction, HTH drivers were handing out "placards and coupons advertising Chill's platform to customers." *Id.* ¶52.[7]

In short, Eaze alleged that HTH, Dyme and Herban CA were acting in concert in furtherance of Chill in 2019—the same time that Billups was providing services to Chill. In this action, Eaze has filed not one, but two motions to dismiss claiming that HTH is not subject to this court's jurisdiction, essentially because it did not have a relationship with Herban, or Herban CA. David Adams, Eaze's Vice President of Payments and Litigation, even testified that "[t]here was no consolidated enterprise known as Chill or CaliChill." *Adams Decl.* ¶10, Dkt. 50. Yet, in 2019, Eaze alleged that Herban, Herban CA, Dyme, and HTH were all acting in concert to promote Chill. Eaze's duplicity should not receive any favor from this court. Eaze's "admissions of fact" in the Eaze Litigation should be construed as "judicial admissions" which, are "conclusive on the party making such an admission." *Borgert v. Spurling et al.*, 191 Or. 344, 352 (1951). On their face, these judicial admissions defeat this Motion. Eaze knows that, in 2019, Chill was a consolidated enterprise advanced by HTH, Herban, and Herban CA.

---

[7] Per the Asset Purchase Agreement in which Eaze purchased Dyme's assets out of the Receivership, Eaze also purchased all of Dyme's rights in the Eaze Litigation. *Adams Decl.* Ex 2, p. 8 Dkt. No. 50-2 (defining "Purchased Assets" to include "[a]ny and all rights to any Claims of any nature available to, or being pursued by Dyme, the Receiver, Herban, any of the Herban parties, whether by way of any Legal Proceeding or otherwise, that involves in any manner the Purchaser [Eaze], Hometown Heart . . . including without limitation the Herban Litigation . . . ."). Presumably, the case settled immediately.

Page 19 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

It even litigated this theory until Dyme went into a Receivership. Eaze cannot credibly deny this same theory here.

In sum, Plaintiff, through the Declaration of Dyme's CEO and Chairman of the Board of Directors in 2019 Edward Fields, the Dyme Report, the Second Receivership Report, and the documents filed in the Eaze Litigation have substantial evidence to show that (a) Chill was a consolidated enterprise of Herban and its two subsidiaries HTH and Herban CA, and (b) that HTH's role in the consolidated enterprise was as the retailer of record.

### 3.   ByProxie acted as HTH's agent and subject to its control.

Plaintiff's evidence that ByProxie acted as HTH's agent and subject to its control is two-fold. As noted above, Plaintiff pled that HTH, by its own actions, directed ByProxie to act on its behalf. Plaintiff also pled that HTH is bound by the actions of Herban, its manager, which also establishes an agency relationship between HTH and ByProxie. Both of these allegations are supported by evidence.

### a.   HTH authorized ByProxie to act as its agent and exercised control over ByProxie.

Edward Fields confirms the following facts. First, prior to signing Plaintiff's Media Authorizations, ByProxie sent the same to HTH, who reviewed them and authorized ByProxie to sign them. *Fields Decl.* ¶14. Second, ByProxie regularly met with HTH no less than once per week, throughout the Campaign to go through ByProxie's financial commitments to Plaintiff, and otherwise receive HTH's guidance on the Campaign. *Id.* ¶15. Third, HTH regularly provided direction to ByProxie over the course of the Campaign, which ByProxie followed. *Id.* Fourth, ByProxie regularly sent Plaintiff's invoices to HTH for their review and approval. *Id.* Fifth, HTH knew and agreed that the cost of the Campaign would be paid to

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

ByProxie, and ultimately, Plaintiff, out of the revenue of Chill Sales, which would have flowed through HTH as the retailer for Chill. *Id.* ¶12. In other words, HTH agreed that its revenue would be used to pay Plaintiff. Sixth, ByProxie understood that it was acting as an agent for Herban, HTH, and Herban CA, and deferred to "the directions it also received from HTH." *Id.* ¶16. These statements, which must be taken as true for the purposes of this Motion, clearly show that HTH authorized ByProxie to act on its behalf and subject to its control.

### b. ByProxie's agency relationship with HTH was also established by Herban, acting as HTH's manager.

Defendants will likely reply that the CSA between Herban and ByProxie shows that the only agency relationship that existed was between those two entities, not HTH. First, this argument is refuted by the MSA, which Plaintiff has not yet been able to obtain but is described in the Dyme Report. *Drum Decl.* Ex B, p. 32. Per the MSA, Herban gained *total* control over HTH's marketing, branding, and finances. *Id.; see also*, *Fields Decl.* ¶¶ 5, 10. "At the time Herban entered into the CSA, it was exercising the rights that it had under the MSA to make branding and marketing decisions for HTH, since HTH provided the retail sales and delivery arm of Chill." *Fields Decl.* ¶11. "Herban engaged ByProxie to provide Chill with promotional services for the benefit of the consolidated enterprise of Herban, HTH, and Herban CA as all three entities would financially gain if Chill's customer base grew." *Id.* Though HTH's approval of the CSA was not needed, because Herban was empowered to make all the decisions for HTH, practically speaking "HTH was aware of the CSA and approved of the same." *Id.* ¶13.

Second, Mr. Fields also testifies that, at the time Herban signed the CSA, Herban, Herban CA, and HTH all understood that ByProxie would be paid with the revenue that HTH

Page 21 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

gleaned from the Chill Website. *Id.* ¶12. This is evident from the CSA itself, which states that ByProxie would be paid an incentive payment for certain new customers that "registered a user profile on www.orderchill.com, and has made a minimum $55 purchase net of discounts." *Id.* ¶11, Ex A. As these sales were made through HTH's license, it was clear that HTH's revenue would be used to pay ByProxie and, ultimately, Plaintiff. *Id.* ¶12.

Plaintiff's pleadings and affidavits present adequate evidence for this Court to assume that ByProxie acted on behalf of HTH and subject to its control. ByProxie was directed both by HTH directly and by Herban, acting as HTH's manager. *Id.* ¶¶14-16. As a result, Plaintiff has met its *prima facie* showing that HTH, by and through the actions its agent ByProxie, HTH purposefully availed itself of the privilege of conducting business in Oregon.

> **B.    Plaintiff's claim arises out of HTH's forum-related activity, as it was HTH's agent that obtained Plaintiff's advertising services and, failed to pay for the same.**

Moving to the second prong of the Ninth Circuit's analysis for specific jurisdiction, Plaintiff's Second Amended Complaint shows that it "would not have suffered an injury 'but for' [HTH and Eaze's] forum-related conduct" by and through its agent ByProxie. *Order*, Dkt. 42, quoting *Menken v. Emm*, 503 F.3d 1050,1058 (9th Cir. 2007). Here, Plaintiff's suit is solely to collect payment for its performance under the Media Authorizations and the advertising services it provided for Chill. Had ByProxie, on behalf of HTH, Herban, and Herban CA, not signed Plaintiff's Media Authorizations or directed Plaintiff to run the Campaign for Chill, Plaintiff would not have suffered any losses. Plaintiff's damages, complained of in this action, are the direct result of ByProxie's actions, which were on behalf of Herban, HTH, and Herban CA.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

Defendants cannot reasonably dispute that Plaintiff's losses are the result of ByProxie's actions. The only dispute here is whether ByProxie, by signing the Media Authorizations and obtaining of Plaintiff's services, acted on behalf of HTH. This dispute relates solely to the first element of the Ninth Circuit's test for specific jurisdiction. This second prong is not reasonably in dispute.

Clearly, Plaintiff's allegations are that, but for Defendants' forum related contact, where it reached out to Plaintiff, engaged Plaintiff's business, and obtained Plaintiff's performance, Plaintiff would have avoided injury.

### C.    Defendants cannot show that the assertion of specific jurisdiction in Oregon is unreasonable.

Plaintiff has succeeded in satisfying both of the first two prongs of the Ninth Circuit's test for specific jurisdiction. Now the burden "shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F. 3d at 802, quoting *Burger King*, 471 U.S. at 476-78. Applying the Ninth Circuit's seven-factor balancing test, it is clear that Defendants cannot make this compelling case.

### 1.    Extent of the Defendant's purposeful interjection into the forum state's affairs.

This case arises because ByProxie, as agent for Herban, HTH, and Herban CA purposefully interjected itself into the affairs of Plaintiff, an Oregon corporation. *Second Am. Compl*. ¶25. ByProxie signed Plaintiff's Media Authorizations, promised that Plaintiff would be paid in full for its performance, and then directed Plaintiff to perform. *Id*. ¶¶25-26. As part of obtaining Plaintiff's services, ByProxie expressly agreed that any collection action would be litigated exclusively in Oregon. *Id*. at Ex A, p. 10. HTH and Herban, who reviewed the

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

Media Authorization Agreements and authorized ByProxie to sign the same, were aware that Plaintiff required any litigation related thereto to be brought in Oregon. *Id.* ¶36; *Fields Decl*. ¶14. It was ByProxie, with the approval of direction of Herban, HTH, and Herban CA, that engaged in business in Oregon with an Oregon corporation. As a result of this interjection, Plaintiff performed substantial services, for which it has not been paid. This factor weighs in favor of Plaintiff.

### 2.    Burden on the Defendant of defending in the forum.

Defendants cannot show any genuine prejudice in litigating this matter in Oregon. While Defendants, ostensibly, will have to travel to Oregon for trial, this inconvenience is not "so great as to constitute a deprivation of due process." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 608 (9th Cir. 2018) (internal citations omitted). Nor has litigating this matter in Oregon deprived Defendants of their choice of counsel. Defendants have been able to retain the counsel of their choice from their home state, Lewis & Llewellyn LLP, who have been admitted to this Court *pro hac vice*, and have retained an excellent Portland firm to assist in their representation. Further, the legal issues in this case will not force Defendants to engage with a foreign legal framework. This case involves a straight-forward application of basic contract principals, and Defendants have not shown that Oregon law and California law are terribly different in this regard.

Lastly, to the extent that Defendants can show a burden, they were able to foresee and avoid the same when ByProxie signed Plaintiff's Media Authorizations. Those agreements all state that "the parties expressly consent to jurisdiction and venue in the State of Oregon." HTH, at the time it "reviewed and approved of ByProxie signing these Media Authorizations,"

Page 24 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

could have reasonably foreseen that, if it did not pay ByProxie the sum in Plaintiff's invoices, that it would be hauled into court in Oregon. *Fields Decl.* ¶14. This factor weighs in favor of Plaintiff.

### 3. Conflict with the sovereignty of the Defendant's state.

Defendants cannot identify any conflict between the sovereignty of California and Oregon that would justify denying personal jurisdiction in this matter. California businesses who do business with Oregon corporations litigate in this state all the time. Defendants cannot point to any substantial conflict of laws between California and Oregon that would affect this case. As such, this factor weighs in favor of Plaintiff.

### 4. The forum state's interest in adjudicating the dispute.

Indisputably, "Oregon's interest is high." *Nike, Inc. v. Lombardi*, 732 F. Supp. 2d 1146, 1156 (D. Or. 2010), citing *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004). Oregon has an interest substantial interest in adjudicating the dispute of an Oregon corporation who alleges injury due to the breach of its contract. This factor favors Plaintiff strongly.

### 5. The most efficient judicial resolution of the controversy.

The most efficient judicial resolution is in this Court, which is already well familiar with the facts of this case. If this court dismisses this case, or transfers it to California, Plaintiff will likely have to reset the clock on its road to trial. As this case is already eleven months old, the delay to Plaintiff will be significant. This factor weighs in favor of this Court retaining the case.

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

6.      **The importance of the forum to the Plaintiff's interest in convenient and effective relief.**

Plaintiff is an Oregon corporation. It is most convenient and effective for Plaintiff to litigate this claim in Oregon.

7.      **The existence of an alternative forum.**

Plaintiff agrees that California is an available alternate forum. This factor favors Defendant. However, for Defendants to succeed on this Motion, they must show that the assertion of jurisdiction and the adjudication of this case in Oregon is categorically unreasonable. The seven-factor balancing test does not allow for that conclusion. It is eminently reasonable for the Court to litigate the breach of contract and unjust enrichment claims of an Oregon corporation. Defendants, who have shown themselves quite able to litigate this matter in Oregon to date, can articulate no discernable material prejudice that would arise by litigating in this Court. Accordingly, Defendants' Motion must be denied.

D.      **Eaze is subject to Oregon jurisdiction under both theories of general jurisdiction, given its pervasive dealings in Oregon in 2019, and specific jurisdiction, as the successor of HTH.**

In 2019, Eaze was operating as a cannabis delivery service in Oregon and, as such, is subject to general jurisdiction. "A court has general jurisdiction over a defendant whose contacts with the forum are 'continuous and systematic,' even if those contacts are wholly unrelated to the plaintiff's claims. *Helicopter Transp. Servs., LLC v. Sikoosky Aircraft Corp.*, 253 F. Supp. 3d 1115, 1129 (D. Or. 2017), quoting *Helicopteros Nacionales de Columbia, S. A. v. Hall*, 466 U.S. 408, 415-16 (1984). The operative time period of this action is from May - December 2019, when Plaintiff performed services for HTH, Herban, Herban CA, by and through their agent ByProxie. During this exact same time, Eaze operated as a cannabis

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

delivery business in Oregon. *Drum Decl.* ¶10, Ex E. Eaze's March 6, 2019 press release announced that it was now delivering "the best Oregon-grown cannabis to Portland." *Id.* While Eaze has apparently ceased its Oregon operations, it was pervasively delivering cannabis in Portland during the operative time in this complaint.[8] As such, Eaze's systematic and continuous contacts with Oregon in 2019 are adequate grounds for this Court to assert general jurisdiction over it in this action.

Further, Eaze is subject to specific jurisdiction in Oregon based upon its status as the successor of HTH. The only Oregon case that Plaintiff has found addressing the intersection of specific jurisdiction and successor liability is the unreported case of *Moore v. Gulf Atlantic Packaging Corp.*, 2016 WL 8231142 (Nov. 29, 2016). Plaintiff recognizes that *Moore* is nonbinding, but references it because, as the only case on this topic, it may prove useful in the Court's analysis. In *Moore*, the court noted that, while the Ninth Circuit "has not addressed the question whether an entity's contacts with a jurisdiction may be properly imputed to a successor in interest for personal jurisdiction purposes," several circuit courts "have considered the question. . ." *Id.* at 16. They have found that "where the law of the forum state in question would recognize successor's liability for the actions of its predecessor" jurisdiction will follow. *Id.* In other words, if HTH is subject to specific jurisdiction in Oregon, Eaze is similarly situated, as its successor.

In Oregon, a successor is not liable for the debts of a predecessor unless "the purchaser expressly or impliedly assumed the liability." *Id.; see also Gonzalez v. Std. Tools*

---

[8] Though Eaze proudly expanded its services to Oregon, it does not appear that Eaze registered to do business in Oregon, as Plaintiff has been unable to find any record of Eaze with the Oregon Secretary of State. *Drum Decl.* ¶11.

Page 27 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE
TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

*& Equip. Col.*, 270 Or. App. 394, 397 (2015). Plaintiff's theory of successor liability is simply that Eaze assumed liability for this debt. *Second Am. Compl.* ¶9. This theory is well-supported by the evidence. Put simply, when Eaze purchased the assets of Dyme out of the Receivership, it gained Dyme's contractual rights to re-acquire HTH. Per the Asset Purchase Agreement ("APA") between Eaze and the Receivership, Eaze bought "[a]ll Herban Assets and all assets … held by DYME, Herban or any of the Herban Parties in each case to the extent such assets or Herban assets pertain to the operation of the Hometown Heart business." *Adams Decl.*, Ex 2, p. 8, Dkt. 50-2. In other words, Eaze bought Dyme's contractual right to buy all the outstanding shares in HTH. Per the Dyme Report, Dyme had the option "to re-acquire the Hometown Shares for a nominal amount following the receipt of all required regulator approvals." *Drum Decl.*, Ex B, p 32. This was the right that Eaze purchased, per the APA and the Dyme Report. Dyme's option was not for an asset purchase agreement, which could have been structured to leave HTH's liabilities behind, but to purchase all the shares of HTH, leaving the company and its debts intact.

Though Plaintiff has not seen the December 5, 2018 acquisition agreement between Dyme and HTH that is referenced in the Dyme Report, Plaintiff has reason to believe that Dyme's purchase of HTH included HTH's debts. After all, HTH willingly accepted the MSA where it gave Herban full control over its finances and consolidated its financial accounts into Dyme. *Id.* Based on this, it seems very likely that Dyme's acquisition of HTH included its ongoing liabilities.

Presently, Eaze claims that it has only purchased 49% of HTH. *Adams Decl.* ¶5. This does not mean that Eaze does not have the power to purchase the remaining 51% for a "nominal

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

amount" *Id.* Nor does Eaze deny that, like Dyme, it has power over HTH similar to Dyne's power under the MSA. Per the APA, Eaze stepped into Dyme's shoes and, likely voluntarily assumed HTH's debts. Notably, Eaze has not put forward a declaration stating that it is not liable for HTH's debts. The Dyme Report, APA, and the yet unseen MSA all suggest that Eaze is liable for HTH's debts.

Based on this evidence, Plaintiff has pled a *prima facie* case showing Eaze to be a successor of HTH and, as such, this Court should exert specific jurisdiction over Eaze. Plaintiff has pled sufficient evidence to warrant jurisdiction and, ultimately, discovery into Eaze's status as successor of HTH. If, after discovery, Eaze is able to prove that it is not liable for HTH's debt, it always has the option of moving for summary judgment on the matter.

## VI.  CONCLUSION

Plaintiff's pleadings and declarations assert a *prima facie* case that ByProxie acted as HTH's agent and subject to HTH's control at the time that it engaged Plaintiff. These factual assertions, which must be taken as true and construed in Plaintiff's favor, demonstrate that HTH purposefully availed itself of the privilege of doing business in Oregon. *See Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002). Further, Plaintiff's injury; non-payment of its fees due under the Media Authorizations, directly arises from HTH's directions to ByProxie. As such, Plaintiff has fulfilled its burden under the Ninth Circuit's specific jurisdiction analysis. Defendants, conversely, cannot make a compelling case that litigating this matter in Oregon is unreasonable. Eaze, having conducted business in Oregon during the salient time period of the facts at issue in this litigation, is subject to general

Page 29 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351

jurisdiction in Oregon. Alternatively, Eaze, as the successor to HTH, has assumed HTH's liabilities and is subject to specific jurisdiction to the same extent as HTH.

Accordingly, for the above stated reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion.

DATED this 6th day of May, 2021.

IMMIX LAW GROUP PC

By: _____

Nicholas M. M. Drum, OSB #063167
Dayna J. Christian, OSB #973360
E-Mail: nick.drum@immixlaw.com

*Attorneys for Plaintiff*

Page 30 – PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE
TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2021 I caused to be served a true copy of the foregoing **PLAINTIFF BILLUPS, INC.'S RESPONSE TO DEFENDANTS EAZE TECHNOLOGIES INC. AND HOMETOWN HEART'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** on the individuals listed below, by way of the method indicated:

Steven C. Berman                                         *Via E-Mail*
Lydia Anderson-Dana
Stoll Berne, PC
209 SW Oak Street, Suite 500
Portland, OR 97204
(503) 277-1600
sberman@stollberne.com
landersondana@stollberne.com

Paul Llewellyn (admitted *pro hac vice*)                 *Via E-Mail*
Evangeline A.Z. Burbidge (admitted *pro hac vice*)
Amy Kashiwabara (admitted *pro hac vice*)
Lewis & Llewellyn, LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 800-0592
PLlewellyn@lewisllewellyn.com
eburbidge@lewisllewellyn.com
akashiwabara@lewisllewellyn.com

*Attorneys for Defendants Hometown Heart*
*and Eaze Technologies, Inc.*

IMMIX LAW GROUP PC

Nicholas M. M. Drum, OSB No. 063167
Dayna J. Christian, OSB No. 973360
Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, Oregon 97209
Phone: (503) 802-5533
E-Mail: dayna.christian@immixlaw.com
E-Mail: nick.drum@immixlaw.com

*Attorneys for Plaintiff*

Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR  97209
Telephone:  503-802-5533
Facsimile:  503-802-5351